IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James R. Hagy, III, et al.,    :

    Plaintiffs,    :

  v.    :    Case No. 2:11-cv-530

      :

Demers & Adams, LLC, et al.,    Magistrate Judge Kemp

      :

    Defendants.

## ORDER

This case is before the Court to consider the motion to strike (#33) and the motion to dismiss the plaintiff's amended complaint (#26) filed by Defendants Demers & Adams, LLC and David J. Demers ("the Law Firm Defendants"). Defendants Green Tree Servicing LLC and Kevin Winehold ("Green Tree Defendants") are not parties to these motions. For the following reasons, this Court grants in part and denies in part the motion to dismiss and denies the motion to strike.

### I. Background

Because the Law Firm Defendants have filed a motion to dismiss, the facts on which this decision turns are contained in the Amended Complaint and assumed to be true for purposes of this motion only. This Court also relies, for background only, on facts recited in the parties' filings with this Court which are also assumed to be true for purposes of this motion only.

According to the Law Firm Defendants, in September of 2002, plaintiffs, James R. Hagy, III and Patricia R. Hagy, executed a fixed-rate note and mortgage securing payment of that note with Conseco Finance Servicing Corp. The Green Tree Defendants have asserted that Conseco was subsequently converted to Green Tree Servicing LLC. (Motion to Stay, #15, p. 2). According to the

Amended Complaint, on April 28, 2010, the Law Firm Defendants filed a foreclosure action against the Hagys on behalf of Green Tree Servicing LLC in the Carroll County Court of Common Pleas. (Amended Complaint, #18, ¶11). After receiving the summons and complaint, Patricia Hagy called the Law Firm Defendants and asked whether some type of settlement could be reached regarding the default on the note and mortgage.(Amend. Compl., #18, ¶12). On June 8, 2010, David Demers sent the Hagys a letter and warranty deed in lieu of foreclosure. (Amend. Compl., #18, ¶13, Ex.3). Mr. Demers stated in the letter that "in return for executing the Deed In Lieu Green Tree has advised me that it will waive any deficiency balance." (Amend. Compl., #18, Ex.3). On June 24, 2010, the Hagys signed the warranty deed in lieu of foreclosure. (Amend. Compl., #18, Ex. 4). On June 30, 2010, Mr. Demers confirmed in a letter to the Hagys' counsel, James Sandy, Esq., that he had received the warranty deed in lieu of foreclosure and that in return for the Hagys "executing the Warranty Deed in Lieu of Foreclosure Green Tree will not attempt to collect any deficiency balance which may be due and owing after the sale of the collateral." (Amend. Compl., #18, Ex. 5).

After the warranty deed in lieu of foreclosure was executed, Green Tree began contacting the Hagys by phone for collection of an alleged deficiency. (Amend. Compl., #18, ¶15). On June 15, 2011, the Hagys filed this case against the Law Firm Defendants and the Green Tree Defendants alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692, *et seq.*, the Ohio Consumer Sales Practices Act, O.R.C. §§1345.01 *et seq.*, and common law invasion of privacy. In their amended complaint, filed on August 11, 2011, the Hagys allege that the Law Firm Defendants violated their rights under the FDCPA by failing to provide them with the mandatory statutory notice in violation of 15 U.S.C. §1692g; failing to consummate the deed in

lieu of foreclosure with Green Tree in violation of 15 U.S.C. §§1692e and/or 1692f; engaging in conduct the natural consequence of which is to harass, and/or oppress in violation of 15 U.S.C. §1692d; failing to provide the Hagys with the mandatory statutory notice in violation of 15 U.S.C. §1692e(11); and using false, deceptive, and/or misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. §1692e. (Amend. Compl., #18, ¶¶22-24). The Hagys also allege that all defendants knowingly committed unfair, deceptive, and unconscionable acts and/or practices in violation of O.R.C. §§1345.02 and/or 1345.03 and are therefore entitled to relief under O.R.C. §1345.09. (Amend. Compl., #18, ¶¶28-31).

The Law Firm Defendants argue this case should be dismissed because the claims were not filed within the time allowed by the statute of limitations; because the FDCPA does not apply to communications between debt collectors and a consumer's attorney; because the Law Firm Defendants did not communicate with the Hagys regarding a debt; because they did not make false or misleading representations or unfair practices; because they did not harass, oppress, or abuse the Hagys; because they did not attempt to collect a debt from the Hagys; and because they did not commit unfair, deceptive or unconscionable acts in reaching a settlement with the Hagys. The Hagys have opposed their motion. For the following reasons, this Court grants in part and denies in part the Law Firm Defendants' motion to dismiss.

## II. <u>Motion to Strike</u>

In the Law Firm Defendants' Motion to Dismiss (#26), they argue that the June 8, 2010 communication cannot form the basis of the Hagys' claims under the FDCPA because, among other reasons, it falls outside the statute of limitations period. In their Opposition (#29), the Hagys state they intend to rely on the June 30, 2010 communication, not the June 8, 2010

communication, to support their claims. In their Reply (##30/31), the Law Firm Defendants respond by arguing, for the first time, that the June 30, 2010 communication cannot form the basis of the FDCPA claim because it was a communication made to a consumer's attorney, rather than directly to a consumer. Thus, the Law Firm Defendants raised a new argument to which the Hagys did not have the opportunity to respond.

As a result, the Hagys filed a "Notification of Intention to Rely Upon Additional Authority" (#32), which cited cases that responded to the Law Firm Defendants' new argument. The Law Firm Defendants then filed a Motion to Strike (#33), arguing that the additional authority was an attempt to submit an additional brief without leave of Court. Because the Hagys did not have an opportunity to respond to the new argument raised in the Law Firm Defendants' Reply, this Court will consider their additional authority. The Law Firm Defendants' Motion to Strike will be denied for that reason.

### III. Motion to Dismiss Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89, 93 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits

of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. (quotes omitted). It is with these standards in mind that the motion to dismiss will be decided.

## IV. Discussion

"Congress enacted the FDCPA in order 'to eliminate abusive debt collection practices by debt collectors, to insure that

those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 508 (6th Cir. 2007) (quoting 15 U.S.C. §1692(e)). The FDCPA is "extraordinarily broad" and crafted in response to what Congress perceived "to be a widespread problem." Frey v. Ganwish, 970 F.2d 1516, 1521 (6th Cir. 1992).

### A. Statute of Limitations

The Law Firm Defendants argue that the June 8, 2010 communication between them and the Hagys occurred outside the one-year statute of limitations under the FDCPA. See 15 U.S.C. §1692k(d). The Hagys agree that the June 8, 2010 communication fell outside the statute of limitations because they did not file their complaint until June 15, 2011. The Hagys also agree that their claim under 15 U.S.C. §1692g, alleging that the Law Firm Defendants failed to provide them with the requisite statutory notice, fell outside the statute of limitations and they have abandoned this claim. (Memorandum in Opposition, #29, p. 8-9). Therefore, the Court grants the Law Firm Defendants' motion to dismiss the Hagys' claims under 15 U.S.C. §1692g.

Because the June 8, 2010 communication is outside the statute of limitations and this Court cannot consider it as a basis for the Hagys' FDCPA claims, the only remaining communication on which the Hagys can base their FDCPA claims against the Law Firm Defendants is the June 30, 2010 communication between the Law Firm Defendants and the Hagys' Attorney, James Sandy. In order to survive the Law Firm Defendants' motion to dismiss, the Hagys must have plausibly stated a claim for violation of the FDCPA based on the June 30, 2010 communication.

## B. Debt Collector to Attorney Communication

The Law Firm Defendants argue that the June 30 communication could not form the basis of the FDCPA claim because communications from a debt collector to a consumer's attorney are not subject to the Act. The Hagys disagree and cite a number of cases from outside this Circuit holding that communications made to a consumer's attorney are actionable under the FDCPA. For the reasons that follow, this Court agrees with the Hagys.

This Court must start its analysis with the statutory language of the FDCPA. The Hagys have brought claims under 15 U.S.C. §§1692d, 1692e (and specifically 1692e(11)), and 1692f. The relevant language of each is as follows:

§1692d:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. ...

§1692e:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
. . .
(11) . . . the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

. . .

§1692f:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. ...

All three statutory sections prohibit a debt collector from

engaging in certain conduct in connection with the collection of a debt. Nothing in the language of these provisions states that such a communication must be made directly to a consumer, or that otherwise actionable communications made to a consumer's attorney do not violate the statute. Section 1692d states a debt collector may not harass, oppress or abuse "any person" and makes no exception for a consumer's attorney. Section 1692e(11) regulates the contents of "communications" from a debt collector. A "communication" is defined elsewhere in the FDCPA as "the conveying of information regarding a debt *directly or indirectly* to *any person* through any medium." 15 U.S.C. §1692a(2) (emphasis added). Clearly, Congress intended that "communication" be construed broadly to encompass more than just conveying information directly to the consumer. The term "debt collector" is defined in the statute to include any person who regularly collects or attempts to collect, "directly or indirectly," debts owed another. 15 U.S.C. §1692a(6). Again, Congress contemplated that debt collectors would deal with other individuals besides the consumer. If Congress had intended to limit the statutory sections at issue here to communications made only to the consumer, it would have done so.

This Court's interpretation of the statute is supported by decisions from the Courts of Appeals for the Third, Fourth, and Seventh Circuits. See <u>Allen ex rel. Martin v. LaSalle Bank, N.A.</u>, 629 F.3d 364, 368 (3rd Cir. 2011); <u>Sayyed v. Wolpoff & Abramason</u>, 485 F.3d 226, 232-33 (4th Cir. 2007); <u>Evory v. RJM Acquisitions Funding LLC</u>, 505 F.3d 769 (7th Cir. 2007). The Sixth Circuit Court of Appeals has so far declined to address this question. <u>Barany-Snyder</u>, 539 F.3d at 333 n.2 (6th Cir. 2008). This Court is particularly persuaded by the Seventh Circuit's discussion in <u>Evory</u>, which interpreted the same statutory language of the FDCPA that is at issue here. <u>Evory</u>,

-8-

505 F.3d at 773. Judge Posner, writing for the court, points out that the relevant sections of the FDCPA "do not designate any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity." Evory, 505 F.3d at 773.

There is, not surprisingly, some contrary authority. See, e.g., Guerrero v. RJM Acquisitions LLC, 499 F.3d 926 (9th Cir. 2007); Kropelnicki v. Siegel, 290 F.3d 118, 128 (2nd Cir. 2002)(stating, in dicta, that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorneys, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior. However, this is not an issue on which we need to rule today."); Kline v. Mortgage Elec. Sec. Sys., 659 F. Supp. 2d 940 (S.D. Ohio 2009)(Rice, J.).

Guerrero, the case on which Judge Rice in this district relied for his holding in Kline, held that the FDCPA does not govern communications between debt collectors and a consumer's attorney. The court concluded that the FDCPA treats the consumer and his attorney as legally separate entities and therefore a communication to a consumer's attorney would not be considered a communication to the consumer, and thus would not be actionable. Guerrero, 499 F.3d at 935. To support this conclusion, the court pointed to 15 U.S.C. §1692c(a)(2), which requires that a debt collector who knows that a consumer has retained counsel regarding the subject debt may contact counsel, but may not generally contact the consumer directly without the attorney's consent. Id. The court also pointed to 15 U.S.C. §1692c(b), which requires that a debt collector not communicate with "any person other than the consumer, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector," as evidence that consumers and their attorneys are treated separately. Finally, the court

pointed out that the definition of "consumer" included the consumer's "spouse, parent. . ., guardian, executor, or administrator" and did not include the consumer's attorney. 15 U.S.C. §1692c(d). Id. Thus, under this interpretation, the statute as a whole suggests "that lawyers and their debtor clients will be treated differently." Id. at 935.

The fact that consumers and their attorneys are seen as legally distinct does not necessarily imply, however, that both of them are not included as persons to whom improper and actionable communications can be made. Addressing this point, the Guerrero court stated that "Congress did not view attorneys as susceptible to the abuses that spurred the need for the legislation to begin with. . ." Id. The court went on to analyze §1692g(b), a provisions at issue in Guerrero but not at issue here, and noted that it placed "repeated emphasis on the 'consumer'. . ." Id. at 936. The court did not analyze the statutory language of §1692e.

This Court respectfully disagrees with Guerrero. As the dissent in Guerrero points out, the majority's opinion focuses almost entirely on analysis of §1692g(b), a section that is not at issue in this case. Guerrero, 499 F.3d at 943 (Fletcher, J. dissenting). The majority decision does not even address the statutory language of §1692e, a section that is at issue in this case. Moreover, the fact that §1692c treats attorneys and consumer differently demonstrates that Congress knew how to differentiate between the two individuals, and simply choose not to do so when it came to the statutory sections at issue here. Section 1692c(a)(2)

> specifically provides that, where a debtor is represented by an attorney, the debt collector shall direct all 'communication' to the attorney, absent permission to communicate directly with the debtor. A proper reading of the text therefore dictates that §1692e, which regulates categorically the contents of

-10-

>     communications by the debt collector, covers the
>     'communication' to the debtor's attorney described in
>     §1692c(a)(2).

<u>Guerrero</u>, 499 F.3d at 943-944 (Fletcher, J. dissenting). Based on a reasoned reading of the statutory text, this Court holds that the sections of the FDCPA at issue in this case apply to communications between debt collectors and a consumer's attorney.

Here, the Hagys argue that the June 30, 2010 communication to their attorney, James Sandy, was a violation of §§1692e, 1692f, and 1692d of the FDCPA because Mr. Demers induced them to sign the warranty deed in lieu of foreclosure by stating (allegedly falsely) that Green Tree would not thereafter attempt to collect any deficiency. They also claim the Law Firm Defendants failed to communicate the Warranty Deed in Lieu to Green Tree. In addition, the Hagys also claim that the Law Firm Defendants violated §1692e(11) by failing to disclose that the June 30, 2010 letter was a communication from a debt collector. Here, the fact that this communication was made to Mr. Sandy, as opposed to the Hagys themselves, is of no consequence under the text of the statute and is not a sufficient reason to dismiss the Hagys' claims against the Law Firm Defendants.

<u>C. In Connection with the Collection of a Debt or an Attempt to Collect a Debt</u>

Next, the Law Firm Defendants argue that the June 30 communication could not form the basis of the FDCPA claim because it was simply an offer to settle litigation and not a communication made in connection with the collection of a debt or an attempt to collect a debt. In response, the Hagys argue that even if a communication does not demand payment, it can still have been made in connection with the collection or attempt to collect a debt. For the reasons that follow, this Court agrees with the Hagys.

As laid out above, the statutory sections at issue in this

-11-

case require that the conduct of a debt collector be "in connection with the collection of a debt" under §§1692d and 1692e or an "attempt to collect any debt" under §1692f. Under §1692e, a debt collector who fails to disclose in a "subsequent communication" that the communication is from a debt collector also violates the Act. As discussed above, "communication" is defined as conveying information "regarding a debt. . ." 15 U.S.C. §1692a(2).

In order to be actionable, "a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one." Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) (quoting 15 U.S.C. §1692e). The Court of Appeals has not always required an "explicit demand for payment" in order for the statute to apply. Id. "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Id. "A letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection." Id.

Courts have routinely held that a settlement offer, when made in a deceptive manner, can be a violation of the FDCPA. Goswami v. Am. Collections Enter., 377 F.3d 488, 496 (5th Cir. 2004)(holding a debt collector may offer a settlement, but it may not be deceitful in the presentation of that settlement offer); Gully v. Van Ru Credit Corp., 381 F. Supp. 2d 766, 769-771 (N.D. Ill. 2005)(considering whether a settlement offer is false or misleading under the FDCPA); Dupuy v. Weltman, 442 F. Supp. 2d 822, 828 (N.D. Cal. 2006)(where a debt collection letter contains an offer to settle in an untruthful manner the letter contains a false statement within the meaning of the FDCPA). The Seventh Circuit has explicitly held that an offer letter to discuss "foreclosure alternatives" was an attempt to

-12-

collect on a defaulted home loan- by settlement or otherwise. <u>Gburek v. Litton Loan Servicing LP</u>, 614 F.3d 380, 386 (7th Cir. 2010). While "it is important to permit collection agencies to offer settlements, that policy consideration does not remove collection agencies' obligation under the FDCPA to deal in a nondeceitful manner." <u>Goswami</u>, 377 F.3d at 496.

Here, the Law Firm Defendants' June 30 letter was sent "in connection with the collection of a debt" and was also an "attempt to collect any debt." The purpose of the June 30, 2011 letter was to inform the Hagys and their attorney that should a deficiency balance be realized after the sale of the collateral, Green Tree would not attempt to collect a deficiency in return for the Hagys execution of the warranty deed in lieu. The animating purpose of the foreclosure action as well the settlement discussions contained in the June 30, 2011 communication was to induce the Hagys to pay the Green Tree defendants, at least in part, on the unpaid note. Therefore, the June 30, 2010 communication does qualify as being made "in connection with the collection of a debt" and as an "attempt to collect" a debt.

In <u>Grden</u>, the consumer called the debt collector to verify his account balance and the debt collector incorrectly told the consumer he owed more than he actually did. <u>Id.</u> at 171. The debt collector then sent the consumer a "ledger card" that reiterated the incorrect balance. <u>Id.</u> In holding that the communication was not made "in connection with a debt," the Court of Appeal's decisive point was that the debt collector made the statements only after the consumer called and asked for them and that the statements were "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." <u>Id.</u>

Although the Law Firm Defendants' settlement discussions in

-13-

this case were likewise made in response to Mrs. Hagys original phone call wanting to discuss settlement, they were also "part of a strategy to make payment more likely." That is, the Warranty Deed in Lieu of Foreclosure allowed the Law Firm Defendants to collect at least part of the debt owed to Defendant Green Tree.

In Shaw v. NCO Financial Services, Inc., No. 3:07-CV-245-S, 2007 WL 3342291 (W.D.Ky. November 09, 2007), a debt collector, in settling a prior litigation with the consumer, agreed to satisfy the debt owed by the consumer. After entering into the settlement agreement, however, the consumer was contacted by a second debt collector demanding payment of the same debt. Id. at *5. The court held that construing the allegations of the complaint in a light most favorable to the consumer, the debt collector, in agreeing to "release [the consumer] from any and all liability concerning the debt at issue in the Lawsuit" not only settled the lawsuit, but also settled the consumer's debt. Therefore, the settlement negotiation was in connection with the collection of a debt. Id. at *7. Here, the material facts are much the same. In attempting to settle the foreclosure actions, the Law Firm Defendants also attempted to settle the Hagys' debt. As such, their communications regarding that settlement fall squarely within the FDCPA.

In support of their argument that settlement negotiations do not constitute a "communication regarding a debt," the Law Firm Defendants cite to only one case, Jackson-Spells v. Francis, 45 F. Supp. 2d 496 (D. Md. 1999). Jackson-Spells, a brief decision with very little legal analysis, stated that an attorney's offer to settle a replevin action, which was brought by the consumer against a repair shop, was not a "communication" within the FDCPA but rather "an offer to settle litigation which the consumer had herself initiated." Id. at 497. Jackson-Spells

-14-

was decided prior to the number of cases discussed above and the Court does not find its reasoning persuasive.

### D. Harassment, Oppression, or Abuse. False or Misleading Representations, and Unfair Practices

The Law Firm Defendants next argue that the Hagys have not stated a claim under §§1692d, 1692e, and 1692f because (1) the Law Firm Defendants' conduct could not possibly be seen as conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; (2) the Law Firm Defendants did not use "false, deceptive or misleading representations" in connection with the collection of a debt; and (3) the Law Firm Defendants did not use "unfair or unconscionable means" to attempt to collect a debt. The Hagys have, however, alleged sufficient facts in their complaint to assert plausible claims under these sections.

"Courts use the least sophisticated consumer standard, an objective test, when assessing whether particular conduct violates the FDCPA." Barany-Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir. 2008). This test asks "whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 172 (6th Cir. 2011). The least-sophisticated-consumer test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 509 (6th Cir. 2007) (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)). But the standard also incorporates a level of reasonableness and presumes a basic understanding and willingness to read with care. Fed. Home Loan Mortg. Corp., 503 F.3d at 510.

As discussed above, the communication at issue in this case was not made to a consumer, but the consumer's attorney. In

Evory, Judge Posner noted that communications made to attorneys should be not be judged under the least sophisticated consumer standard, but instead under a "competent lawyer" standard. Evory v. RJM Acquisitions Funding LLC, 505 F.3d 769, 775 (7th Cir. 2007). In Judge Posner's opinion, however, under either standard, if a debt collector makes a false claim of fact that is material, that communication would be actionable whether made to either the consumer or to the lawyer. Id.

Here, when analyzing the Hagys' claims under §§1692d, 1692e, and 1692f on this motion to dismiss, this Court need not reach the issue of whether the least sophisticated consumer standard applies or whether the competent lawyer standard applies because it is plausible that the Law Firm Defendants made a false statement, which would be a violation of either standard. The Hagys allege that the Law Firm Defendants represented in the June 30, 2010 letter that in exchange for the Warranty Deed in Lieu of Foreclosure, Green Tree would not thereafter attempt to collect any deficiency. After signing the Warranty Deed in Lieu of Foreclosure, the Green Tree Defendants did attempt to collect such a deficiency. Therefore, the Hagys plausibly allege that the Law Firm Defendants never intended to communicate the Warranty Deed in Lieu of Foreclosure to Green Tree or simply failed to do so after the agreement was signed. If the Law Firm Defendants made a false statement, it is plausible under either a least sophisticated consumer standard or a competent lawyer standard that such a communication would constitute conduct that violated §§1692d, 1692e, and 1692f.

In order to constitute conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" in violation of §1692d, the tactics must be intended to "embarrass, upset, or frighten" a debtor and may be sufficient if they concern "coercion, scare

tactics, or fraud." Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006). An intentional misrepresentation that induced the consumer to believe that their debt was settled would certainly be considered conduct intended to "embarrass, upset, or frighten" a consumer. Application of the standards set forth in §§1692e and 1692f are even more straightforward. Clearly, such a misrepresentation is a "false, deceptive, or misleading representation" in violation of §1692e and would certainly be considered an "unfair or unconscionable" means to collect a debt in violation of §1692f.

For the above reasons, the Law Firm Defendants' Motion to Dismiss the Hagys FDCPA claims is denied with the exception of the motion to dismiss the claims under 15 U.S.C. §1692g, which is granted.

### E. Violations of O.R.C. §§1345.02 and 1345.03

The Law Firm Defendants argue they did not knowingly commit unfair, deceptive, and unconscionable acts or practices in violation of O.R.C. §§1345.02 and 1345.03. They also argue, in their reply, that they are not "suppliers" under the OCSPA and therefore these provisions do not apply to them. For the reasons that follow, this Court disagrees.

As a starting point, this Court notes that the OCSPA has a two-year statute of limitations. O.R.C. §1345.10(C). Therefore, both the June 8, 2010 communication from the Law Firm Defendants as well as the June 30, 2010 communication from the Law Firm Defendants can form the basis of the OCSPA violation. As with the FDCPA, the OCSPA has a "remedial purpose and must accordingly be liberally construed in favor of consumers." Charvat v. Farmers Ins. Columbus, Inc., 178 Ohio App.3d 118, 133 (Franklin Cty. 2008).

Under O.R.C. §1345.02(A), "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a

-17-

consumer transaction." O.R.C. §1345.03, in contrast, deals with unconscionable acts or practices rather than deceptive acts or practices. It states "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction." O.R.C. §1345.03(A). Both sections indicate that such acts or practices violate the section "whether [they] occur[] before, during, or after the transaction." O.R.C. §§1345.02(A) and 1345.03(A).

The above sections of the OCSPA apply only to "suppliers" within the meaning of the Act. A "supplier" is a "seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." O.R.C. §1345.01(C). A supplier cannot "relieve itself of its duty to act fairly by assigning its claim to an agent or assignee and having that assignee conduct practices prohibited by the Act." Celebrezze v. United Research, Inc., 19 Ohio App. 3d 49, 51 (Summit Cty. 1984). See also Midland Funding LLC v. Brent, 644 F. Supp. 2d 961, 976 (N.D. Ohio 2009)(holding debt collectors are suppliers under the OCSPA). Accordingly, a collection agency, for purposes of the OCSPA, "is a person engaged in the business of effecting consumer transactions (i.e., payment) and, as such, is a supplier pursuant to R.C. 1345.01(C)." Celebrezze, 19 Ohio App. 3d at 51.

The OCSPA has generally been interpreted by the district courts in Ohio to apply to the filing of lawsuits by attorneys in order to collect debts associated with consumer transactions. Turner v. Lerner, Sampson & Rothfuss, 776 F. Supp. 2d 498, 509 (N.D. Ohio 2011)(concluding that the debt collection activities of attorneys, i.e. the filing of foreclosure lawsuits, fell within the purview of the OCSPA); Delawder v. Platinum Fin. Servs. Corp., 443 F. Supp. 2d 942 (S.D. Ohio 2005)(applying the

-18-

OCSPA to attorneys who filed an allegedly deceptive complaint and affidavit); Lee v. Javitch, Block & Rathbone LLP, 601 F.3d 654 (6th Cir. 2010)(applying the OCSPA to attorneys who filed suit on behalf of an assignee of debt). See generally Schroyer v. Frankel, 197 F.3d 1170, 1177-78 (6th Cir. 1999)(assuming generally that an attorney who filed suit against a consumer for breach of contract and unjust enrichment would be liable under the OCSPA if debt collection was more than incidental to his practice of law). At least one court in the Southern District of Ohio has held that a law firm collecting debts on behalf of a mortgagee via a foreclosure action may be amendable to suit under the Act. Turner, 776 F. Supp. 2d at 510.

    It is not until the Law Firm Defendants' Reply that they argue they are not "suppliers" under the OCSPA. (Reply, #31, p. 3). Thus, this Court need not address their argument. See Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010)(arguments made for the first time in a reply brief are waived). But the argument would fail in any event. The Law Firm Defendants argue they are not "suppliers" because they simply represented a supplier, Green Tree Servicing, LLC, in a foreclosure action. They argue they did not "engage in a consumer transaction" with the plaintiffs and "took no action to initiate sales, lease, assignment or other transfer of an item of goods with plaintiffs." (Reply, # 31, p. 3). The Law Firm Defendants fail to acknowledge, however, that acts or practices can violate the OCSPA "whether [they] occur[] before, during, or after the transaction." O.R.C. §§1345.02(A) and 1345.03(A). Thus, the fact that the Law Firm Defendants did not "initiate" the transfer of goods to plaintiffs is not relevant to this analysis. Celebrezze, 19 Ohio App. 3d at 51 (holding the OCSPA prohibits the supplier from employing unfair practices "from the initial contact with the consumer until the debt is paid."). Moreover,

under the definition of "supplier" the individual need only "effect[] consumer transactions" (O.R.C. §1345.01(C)), not "initiate" them.

Finding that the Hagys have adequately alleged that the Law Firm Defendants are "suppliers" within the meaning of the OCSPA, this Court must next consider whether the amended complaint states a claim that they committed "unfair or deceptive" or "unconscionable" acts or practices in connection with a consumer transaction. O.R.C. §§1345.02(A) and 1345.03(A). Given the facts discussed above, and based on the allegations in the Amended Complaint it can be inferred that the Law Firm Defendants never intended to communicate the Warranty Deed in Lieu of Foreclosure to Defendant Green Tree or simply failed to do so after the agreement was signed. This Court finds that such actions could plausibly be considered "unfair or deceptive" as well as "unconscionable" in violation of the OCSPA. The Law Firm Defendants have not cited a case to this Court that indicates otherwise. Thus, the Law Firm Defendants Motion to Dismiss the Hagys OCSPA claims are denied.

## V. Order

For the above reasons, this Court denies the Law Firm Defendants Motion to Strike (#33), and grants in part and denies in part the Law Firm Defendants motion to dismiss (#26).

/s/ Terence P. Kemp
United States Magistrate Judge