```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

James R. Hagy, III, et al.,          :

      Plaintiffs,                   :

   v.                                :        Case No. 2:11-cv-530

                                        :

Demers & Adams, LLC, et al.,         :        Magistrate Judge Kemp

      Defendants.                   :

OPINION AND ORDER

    On November 2, 2011, the Court denied (but without prejudice) Defendants Green Tree Servicing LLC's and Kevin Winehold's (the "Green Tree Defendants") motion to stay the claims against them and to compel the plaintiffs, James R. Hagy, III and Patricia R. Hagy, to submit those claims to arbitration. The basis of that order was that the arbitration clause relied on by the Green Tree Defendants is found in a promissory note which the Hagys executed in favor of Conseco Finance Service Corp., and although Green Tree claimed to have succeeded to Conseco's interest in the mortgage, there was nothing in the record to support that claim.

    The Green Tree defendants then amended their motion, submitting documents from the Delaware Secretary of State which address the successorship issue. Plaintiffs responded to the motion, arguing both that the documents do not prove that Green Tree is Conseco's successor in interest, and that even if it is, the Court should not enforce the arbitration clause. For the following reasons, this Court grants the Green Tree Defendants' motion to stay proceedings and to compel arbitration.

I. Background

    In September of 2002, the Hagys executed a fixed-rate note

and a mortgage securing payment of that note in favor of Conseco Finance Servicing Corp.  The note, which is attached to the amended complaint, contains this arbitration clause:

> All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by you with my consent.
>
> ***
>
> Notwithstanding anything hereunder to the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation, or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit.

According to the amended complaint, on April 28, 2010, Defendant Green Tree (acting through counsel, who are also parties to this case) filed a foreclosure action against the Hagys in the Carroll County Court of Common Pleas.  After receiving the summons and complaint, Patricia Hagy called Green Tree's lawyers and asked whether the foreclosure case could be settled.  On June 8, 2010, attorney David Demers sent the Hagys a letter and warranty deed in lieu of foreclosure. (Amended Complaint, #18, Ex.3).  Mr. Demers said that he had been advised by Green Tree that in return for receiving a deed in lieu of foreclosure, Green Tree would waive any deficiency balance that the Hagys owed.  On June 24, 2010, the Hagys signed the warranty deed in lieu of foreclosure. (Amended Complaint, #18, Ex. 4).  On June 30, 2010, Mr. Demers wrote a letter to the Hagys' counsel, James Sandy, stating that he had received the deed and, responding to Mr. Sandy's question about what might happen should the property be sold for less than the amount owed on the note,

that Green Tree would not attempt to collect a deficiency balance if one remained after Green Tree sold the property. (Amended Complaint, #18, Ex. 5).

What happened next is the subject of this federal lawsuit. According to the Hagys, the Green Tree Defendants began contacting them by phone trying to collect a deficiency balance. Believing that the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. §1345.01 *et seq.*, and Ohio common law prohibited such conduct, the Hagys filed this case against both Green Tree and its attorneys.  The merits of that claim, of course, are not before the Court at this time; the current issue is whether the Hagys are bound by the terms of the note to arbitrate their claims against the Green Tree Defendants.

## II. Discussion

### A. Standard of Review

This case is governed by the Federal Arbitration Act ("FAA"), which provides that a court may stay a case pending arbitration in accordance with the terms of an arbitration agreement once the court is satisfied that the issues involved are referable to arbitration.  See 9 U.S.C. §3.  Under the FAA, an arbitration clause contained in a commercial contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2.  Although the enforcement of arbitration agreements contained in contracts governed by state law is usually determined under state law, if a federal statutory claim is the subject of the proposed arbitration, and the district court is exercising federal question rather than diversity jurisdiction, federal law would appear to govern at least some aspects of the question.  See Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79 (2000).  And the FAA itself can be a source of legal

authority which trumps inconsistent state law. AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011). However, as the AT&T Mobility court observed,

> The final phrase of § 2 ... permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

Even if federal common law supplies the rule for deciding whether there are any generally applicable contract defenses available to the party seeking to avoid arbitration of a federal statutory claim, courts have nonetheless routinely looked to the law of the States having an interest in the underlying contract to inform their decision. See, e.g. Gay v. CreitInform, 511 F.3d 369 (3d Cir. 2007). This Court will therefore consider whether Ohio law provides any defenses to the arbitration clause at issue here, keeping in mind that the FAA "manifests 'a liberal federal policy favoring arbitration agreements.'" Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 626 (6th Cir. 2004), quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

A district court considering a motion to compel arbitration has four tasks: "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." Fazio v. Lehman Bros., Inc.,

340 F.3d 386, 392 (6th Cir. 2003), quoting Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000); see also Masco Corp., 382 F.3d at 627 (holding a court must engage in a limited review to determine whether the dispute is arbitrable before compelling a party to arbitrate).

### i. The Parties' Agreement to Arbitrate

The Hagys do not dispute they agreed to arbitrate.  They have not alleged they did not read the document, willingly sign the document, or that they were deceived into signing something other than a promissory note containing an arbitration agreement.  Because they have not disputed this issue, this Court finds the Hagys agreed to resolve any disputes within the scope of the arbitration clause through binding arbitration.

### ii. The Scope of the Arbitration Agreement

District courts have the authority to decide whether an issue is within the scope of an arbitration agreement. Some issues, such as ones relating to the interpretation, construction, or performance of the contract containing the arbitration clause, typically fall within the scope of such a clause; otherwise, it would be largely meaningless.  But arbitration clauses are not always limited to matters pertaining directly to the underlying contract, particularly if the clause is broadly worded.  Most disputes over arbitration clauses raise the question of where to draw the line between matters that the parties agreed to arbitrate, and matters they did not.  In the end, of course, it is the parties' intent, expressed in the language of the arbitration clause, that controls.

As far as matters which typically need not be arbitrated, the Court of Appeals (as well as the Ohio courts) have held that "if an action could be maintained without reference to the contract or relationship at issue," it is likely outside the scope of the arbitration agreement.  Fazio, 340 F.3d at 395;

Alexander v. Wells Fargo Financial Ohio, Inc., 122 Ohio St.3d 341, 345 (incorporating the holding of Fazio into Ohio law).  On the other hand, not just contract matters, but tort claims, may fall within the scope of an arbitration clause "if the [tort] allegations 'touch matters'" covered by the agreement.  Fazio, 340 F.3d at 395, quoting Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987); Alexander, 122 Ohio St.3d at 345.  Thus, in Fazio, the court held that customers' claims against their brokerage houses based on a broker's misappropriation of funds, which clearly are tort claims, had to be arbitrated because "the lawsuit by necessity must describe why [defendant] was in control of the plaintiffs' money and what the brokerage houses' obligations were.  The plaintiffs therefore cannot maintain their action without reference to the account agreements..." Fazio, 340 F.3d at 395.

The arbitration agreement here covers "[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract...."  Each of the Hagys' claims against the Green Tree Defendants, which claims arise under the FDCPA, the OCSPA, and the Ohio common law of invasion of privacy, are premised on the Hagys' allegation that the Green Tree Defendants wrongfully attempted to collect a debt which was initially created by the promissory note containing the arbitration clause and purportedly extinguished when the Hagys signed and delivered a deed in lieu of foreclosure.  It would be impossible for the Hagys to prove any of these claims without introducing into evidence, and referring to, the promissory note and the debt relationship which it created.  Consequently, all of these claims seem to fit neatly within the language of the arbitration clause which includes, as arbitrable disputes, matters "relating to ... the relationships arising out of [the note]...."

Were this Court to reach that result, it would not be alone. Other courts have interpreted similar arbitration clauses in a similar way. See, e.g., Wilder v. Midland Credit Mgmt., 2010 WL 2499701, *4 (N.D. Ga. May 20, 2010)(holding that where arbitration agreement covered claims "arising from or relating to this Agreement or the relationships which result from this Agreement," the arbitration agreement was broad enough to cover FDCPA claim involving actions undertaken in collecting a debt that related to a credit account); Miller v. Northwest,2005 WL 1711131, *4 (E.D. Wash. July 20, 2005)(finding plaintiffs' FDCPA claims fell within the scope of a loan agreement because they "arise from" the debt created by the note and the "relationships which result from" the note).

In their responsive memorandum, the Hagys argue that the arbitration agreement does not cover this dispute because their note and mortgage contract with the Green Tree Defendants ended when the foreclosure case was resolved. In their view, the arbitration agreement cannot apply to their claims because those claims arose only after the note was extinguished.

While this argument has some facial appeal, it is ultimately without merit. Generally, "when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired." Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 781 (10th Cir. 1998). The Ohio Supreme Court case of Alexander v. Wells Fargo Financial Ohio 1, Inc., 122 Ohio St.3d 341 (2009) well-illustrates this point. There, the plaintiff entered into a mortgage agreement with Wells Fargo and signed an accompanying mandatory arbitration agreement. She alleged, in her complaint, that she had paid off the mortgage but that Wells Fargo failed to file the entry of

satisfaction of the mortgage within the 90 days prescribed by statute.  Wells Fargo filed a motion to compel arbitration on this issue, and the plaintiff countered that because the mortgage was extinguished before the statutory duty to file the mortgage release arose, the claim did not "arise out of or relate to the mortgage agreement."  Id. at 344.  The Supreme Court of Ohio disagreed, finding that her claim stemmed from her initial signing of the mortgage document.  It noted that "[t]o recover, [plaintiff] must prove that she paid off the loan and that the mortgage release was not timely filed." Id. at 344.  Because such proof related to the parties' relationship as established by the promissory note, the claim fell within the scope of the arbitration clause.

 Similar reasoning applies here.  All of the Hagys' claims presuppose that the Green Tree Defendants had a legal duty to refrain from further efforts to collect on the note.  In order for that legal duty to have arisen, the Hagys would have to "prove that [they] paid off the loan" by way of the deed in lieu of foreclosure.  Because this type of proof is exactly the same type of proof the plaintiff in Alexander had to offer, and because the arbitration clauses in both cases read substantially the same, including language requiring arbitration of any claims either arising out of or "relating to" the underlying contract, Alexander cannot be meaningfully distinguished.  This reasoning has been applied in other cases where the debt created by the note was purportedly extinguished prior to the events giving rise to the plaintiff's claim.  See, e.g., Alkenbrack v. Green Tree Servicing, LLC, 2009 WL 4756349, *3-4 (Geauga Co. App. Dec. 11, 2009)(holding that although the plaintiff's debt had been discharged in bankruptcy, his claim that by sending him statements after the date of discharge, Green Tree incurred tort liability, arose out of the parties' contract and was within the

scope of the arbitration provision); see also Vanyo v. Citifinancial, Inc., 183 Ohio App. 3d 612, 614-615 (Cuyahoga Co. 2009)(also involving a claim that the lender failed timely to file a termination statement after the loan was paid).

    The Hagys contend, however that this case cannot be distinguished from Runion v. Am. Gen. Fin. Servs., 2008 WL 2468573 (Huron Co. App. June 20, 2008), a case where arbitration was not ordered.  They are mistaken.  The facts of that case are very different; the plaintiff property owner filed suit against his lender, who had foreclosed on the property and bought it at a foreclosure sale, as well as a contractor hired by the lender, alleging that the two defendants had either converted or destroyed certain personal property which had remained inside the residence after the foreclosure sale.  The Runion court rightly concluded that these events did not fall within the scope of the arbitration agreement contained in the parties' loan agreement (a home equity line of credit) because the alleged conversion of the personal property was completely unrelated to the loan agreement and mortgage.  In order to prove that claim, the plaintiff would not have had to prove anything at all about the parties' prior dealings, but simply that he owned the personal property in the home and that the defendants unlawfully converted or destroyed it.  Given the lack of similarity of the facts of Runion and the strong parallel between this case and Alexander, the Court finds the latter case the more persuasive.

    The Hagys also argue that their claims are outside the scope of the arbitration clause under the doctrine of merger by deed. They argue that as soon as the deed was accepted by the Green Tree Defendants, the parties' contract was extinguished and none of its terms could be enforced thereafter, supposedly because all of the terms of the prior agreement were "merged" into the deed in lieu of foreclosure, which does not contain an arbitration

clause.  To the extent that this is a different argument than the Hagys' first argument (even though both are premised on the legal proposition that the delivery of the deed in lieu of foreclosure terminated the parties' prior agreement), for the reasons that follow, this Court disagrees that arbitration cannot be ordered here due to the doctrine of "merger by deed."

"The doctrine of 'merger by deed' holds that whenever a deed is delivered and accepted 'without qualification' pursuant to a sales contract for real property, the contract becomes merged into the deed and no cause of action upon said prior agreement exists. The purchaser is limited to the express covenants of the deed only."  37 Robinwood Associates v. Health Industries, Inc., 47 Ohio App.3d 156, 157-158 (Franklin County 1988). See also Fuller v. Drenberg, 3 Ohio St.2d 109, syllabus (1965). Agreements collateral to and independent of the main purpose of the transaction, however, are not merged into the deed.  Medeiros v. Guardian Title & Guar. Agency, Inc., 57 Ohio App.2d 257, 259 (Cuyahoga County 1978); McGovern Builders, Inc. V. Davis, 12 Ohio App.3d 153, 155-156 (Miami County 1983)(holding a real estate vendee's obligation to pay for the real estate arising from a written real estate sale contract does not "merge" into the deed or bar an action to recover any part of the purchase price).

The doctrine of merger by deed generally applies to the relationship between a deed and a prior contract for the sale of real estate.  See Mayer v. Sumergrade, 111 Ohio App. 237, 239 (Cuyahoga County 1960).  The Hagys have pointed this Court to no cases where a promissory note (as opposed to a contract for sale) was merged upon delivery of a deed.  Clearly, a promissory note is not a contract for the sale of real estate.  Instead, it is simply a written promise by one party to pay money to another party.  See Burke v. State, 104 Ohio St. 220, 222 (1922) (a "promissory  note is defined as a written promise to pay a

-10-

certain sum of money at a future time ..."). Even if the doctrine of merger by deed applied to promissory notes, the Green Tree Defendants' motion for a stay and an order compelling arbitration is not an action to recover under the terms of the note. Rather, the issue of arbitration is collateral to and independent of the main purpose of the note and is not merged into the deed because it does not concern the title, occupancy, size, enjoyment, possession, or quantity of the parcel of land conveyed. See Mayer v. Sumergrade, 111 Ohio App. 237, 239 (Cuyahoga Co. 1960); Westwinds Dev. Corp. v. Outcalt, 2009 WL 1741978, *10 (Geauga Co. App. June 19, 2009). Therefore, the doctrine of merger by deed does not preclude arbitration of the Hagys' claims.

### iii. Congress Did Not Intend the Hagys' Claims To Be Nonarbitrable

The third step in the inquiry of whether the Court may order arbitration of a federal statutory claim is whether, when it created the statutory cause of action, Congress expressed the intent that the claim be pursued only through the Courts. That is not the case here. Rather, "Congress did not intend FDCPA claims to be non-arbitrable. Courts routinely permit arbitration of such claims." Hodson v. Javitch, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008); see also Lamb v. Javitch, Block & Rathbone, L.L.P., 2005 WL 4137778, *3 (S.D. Ohio Jan. 24 2005). Similarly, the Ohio courts have held that claims brought under the OCSPA are arbitrable. Hawkins v. O'Brien, 2009 WL 50616, at *6 (Montgomery Co. App. Jan. 9, 2009). The Hagys do not contest this point, so the third inquiry is also resolved in favor of arbitration.

### iv. Which Claims Are Subject to Arbitration and Which Must be Stayed

As the above discussion demonstrates, all three of the Hagys' claims against the Green Tree Defendants are subject to arbitration because they are all related to Green Tree's alleged

attempt to collect a deficiency after the deed in lieu of foreclosure was delivered. Therefore, there is no issue about staying some claims against the Green Tree Defendants but proceeding on others. Consequently, the only remaining issue is whether the Hagys have viable defenses against enforcing the arbitration agreement. The Court now turns to that question.

### B. Unconscionability

First, the Hagys claim that the agreement to arbitrate, if applicable, should not be enforced because it is unconscionable. As noted above, the Court will examine Ohio law on this subject. Under Ohio law, unconscionability is characterized by an "absence of meaningful choice on the part of one of the parties to the contract, combined with contract terms that are unreasonably favorable to the other party." Collins v. Click Camera & Video, Inc., 86 Ohio App.3d 826, 834 (Montgomery County 1993). The unconscionabilty doctrine is comprised of two components: "(1) substantive unconscionabilty, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionabilty, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. Both elements must be present to find a contract unconscionable." Scovill v. WSYX/ABC, 425 F.3d 1012, 1017 (6th Cir. 2005), citing Jeffrey Mining Prods., L.P. v. Left Fork Mining Co., 143 Ohio App.3d 708, 718 (Cuyahoga Co. 2001) and Dorsey v. Contemporary Obstetrics & Gynecology, 113 Ohio App. 3d 75, 80 (Montgomery Co. 1996); Collins, 86 Ohio App.3d at 834.

Substantive unconscionability involves factors relating to the contract terms themselves and whether they are commercially reasonable. Dorsey, 113 Ohio App.3d at 80. The Hagys argue that the arbitration provision at issue in this case is substantively unconscionable because it lacks mutuality - that is, it requires the Hagys to arbitrate any disputes with Green Tree, but permits Green Tree to go to court to "enforce a security agreement,"

"enforce the monetary obligation," or to "foreclose on the collateral."

The absence of an exact parallel between the parties' obligations under an arbitration agreement does not require the Court to find the agreement to be unconscionable. The general rule for contracts is that "the obligations of parties to a contract need not be exactly the same if the contract is supported by consideration." Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St. 3d 352, 367 (2008). Applying that principle to arbitration agreements, Joseph v. M.B.N.A. Am. Bank, N.A., 148 Ohio App. 3d 660, 664 (Cuyahoga Co. 2002) held (albeit under facts different from those presented here) that mutuality is not a requirement of a valid arbitration clause, provided that the underlying contract is supported by consideration. In Fazio, 340 F.3d at 396-97, the Court of Appeals cited Joseph with approval, noting that there was no indication that Ohio had adopted a rule that arbitration agreements contain a "modicum of bilaterality" (quoting Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 113 Cal.Rptr.2d 376, 382 (2001)) and that the general trend in the case law was to uphold arbitration clauses that did not contain mutual obligations so long as the underlying contract was supported by consideration. The Fazio court did not, however, decide that precise issue, noting that "assuming mutuality of obligation in the arbitration clause is a requirement under Ohio law, the arbitration clauses here easily satisfy that requirement." Id. at 397. The decision in Glazer v. Lehman Bros., Inc., 394 F.3d 444 (6th Cir. 2005) appears to take that principle one step further, reasoning that because arbitration clauses cannot be considered to be separate contracts with separate requirements for consideration and mutuality, and that any issues concerning mutuality of obligation are more properly directed to the contract as a whole and not to the

arbitration provisions it contains.  Because the Hagys do not, and could not plausibly, argue that the note and mortgage fail for want of mutuality of obligation, the mere fact that the arbitration clause does not impose identical obligations on both parties does not mean that its terms are substantively unconscionable.

That does not mean, of course, that an arbitration clause can never be so lacking in fairness, due to blatant one-sidedness, that it can escape being deemed unconscionable.  For example, in <u>Williams v. Aetna Finance Co.</u>, 83 Ohio St.3d 464 (1998), one of the cases relied on by the Hagys, the court refused to enforce an arbitration agreement on grounds that it was too heavily weighted in favor of the lender.  There, however, the prepayment provisions for the small consumer were so onerous as to deny such consumers any meaningful chance to have their claims heard at all, and the contract was one of adhesion, leading the court to scrutinize the arbitration agreement more closely.  The court did not invalidate the agreement just because the ability of the parties to bring their claims to court, as opposed to arbitration, were different depending upon which party was asserting the claims; in fact, that did not appear to play any role in the court's decision.

There is authority from other jurisdictions, however, to the effect that arbitration clauses found in contracts of adhesion which preserve one party's right to litigate almost any conceivable claim which might arise under an agreement, while forcing the other party to arbitrate such claims, are unconscionable.  <u>See, e.g., Taylor v. Butler</u>, 142 S.W. 3d 277 (Tenn. 2004).  That court noted that a minority of courts - including, interestingly, the Court of Appeals, in <u>Stout v. J.D. Byrider</u>, 228 F.3d 709 (2000) - had reached the opposite conclusion, but it declined to follow them.  In <u>Stout</u>, the Court

-14-

of Appeals refused to invalidate an arbitration agreement under a used vehicle purchase agreement which allowed the seller to sue in court for non-payment, but relegated most of the buyer's claims to arbitration.  Given that Stout was decided by the Court of Appeals for this circuit, and given the language found in Fazio and Glazer, it is hard to regard Taylor v. Butler as persuasive authority.

Relying on the Court of Appeals' decisions, Price v. Taylor, 575 F. Supp. 2d 845, 853 (N.D. Ohio 2008), upheld an arbitration agreement that, similar to the one involved here, excluded judicial foreclosure and certain other claims from arbitration. As that court conceived the issue, the question is not so much one of mutuality but of consideration - that is, within the arbitration clause, did each party agree to provide something of value to the other, although not necessarily things of equal value.  Thus, because the arbitration clause obligated each party to bring certain claims only in arbitration, it was supported by consideration, even if, as the plaintiff in that case argued, it excluded from arbitration the claims the defendant was most likely to bring.  Id.  The same can be said of the arbitration clause in this case.  While it reserves some judicial remedies to the Green Tree Defendants, including the ones they would be most likely to bring, it still obligates them to arbitrate some claims, and it is not lacking in consideration.

The Hagys also argue that, in Schaefer v. Allstate Ins. Co., 63 Ohio St.3d 708 (1992), the Ohio Supreme Court invalidated an arbitration clause for want of mutuality of obligation.  In fact, the court invalidated an arbitration clause contained in an automobile insurance policy which stated that awards under a certain monetary amount were binding, but if an award exceeded that amount either party could litigate the claim, on grounds that such a clause "does not provide for the 'arbitration' of

-15-

disputes as we have heretofore understood that term." Id. at 714.  That case provides no support for the Hagys' position.  This Court agrees with the result reached in Price v. Taylor and concludes that the arbitration clause is not substantively unconscionable on grounds that it imposes differing obligations on the Hagys and on the Green Tree Defendants.

The Hagys argue that the contract between themselves and the Green Tree Defendants is a contract of adhesion and substantively unconscionable for that reason.  Whether a contract is adhesive in nature, however, is relevant to the relationships between the parties and therefore is properly analyzed under procedural unconscionability.  Regardless, a contract of adhesion (or an arbitration clause found in such a contract) is not necessarily unconscionable per se.  Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St. 3d 352, 363 (2008).

Because both procedural and substantive unconscionability are required before a contract provision can be rendered invalid under Ohio law based on unconscionability (see Scovill v. WSYX/ABC, 425 F.3d 1012, 1017 (6th Cir. 2005)) and because the arbitration provision at issue here is not substantively unconscionable, the Court need not address the Hagys' procedural unconscionability argument.  It concludes that the arbitration clause is not unenforceable on grounds of unconscionability.

### C. Authenticity of Attached Documents

This Court previously denied the Green Tree Defendants' motion to stay because they had not demonstrated they were the true owners or assigns of the Hagys' promissory note. In order to remedy that defect, the Green Tree Defendants have submitted a "certificate of conversion" showing that Conseco Finance Servicing Corp. changed its name to Green Tree Servicing LLC.  If so, Green Tree LLC is the current holder of the Hagys' note.  Accompanying that certificate is a document signed by the

Delaware Secretary of State, and affixed with the seal of the Delaware Secretary of State that states the following:

> I, Harriet Smith Windsor, Secretary of State of the State of Delaware do hereby certify that the attached is a true and correct copy of the certificate of conversion of a Delaware Corporation under the name of 'Conseco Finance Servicing Corp.' to a Delaware Limited Liability Company, changing its name from 'Conseco Finance Servicing Corp.' to ' Green Tree Servicing LLC', filed in this office on the Ninth Day of June A.D. 2003, at 1:34 o'clock p.m.

The document is dated January 9, 2009.

Under Federal Rule of Evidence 902(4), a copy of an official record or a copy of a document that was recorded or filed in a public office as authorized by law can be self-authenticating and require no extrinsic evidence if it is certified as correct by a custodian or another person authorized to make the certification (Fed. R. Evid. 902(4)(A)) or, *inter alia*, if it is certified as correct by a certificate that bears a seal purporting to be that of any state of the United States. (Fed. R. Evid. 902(4)(B) and 902(1)(A)). Copies of official records or of documents recorded or filed in a public office as authorized by law are admissible if these conditions are met and the document is otherwise admissible. Fed. R. Evid. 1005. <u>See generally</u> <u>United States v. Pent-R-Books, Inc.</u>, 538 F.2d 519, 527-528 (2d Cir. 1976) (explaining application of Rule 902(4)); <u>United States v. Beason</u>, 690 F.2d 439, 444-445 (5th Cir. 1982) (same).

The Hagys argue that the "certificate of conversion" is not properly authenticated and may not be accepted by this Court as evidence that Green Tree Servicing LLC is the holder of the note. However, the "certificate of conversion" is not only a document recorded in a the Delaware Secretary of State's office, but it was also certified as correct by the Delaware Secretary of State and bears the seal of the Delaware Secretary of State. Thus,

-17-

this document is self-authenticating.

The Hagys also argue that the Secretary of State's certificate is expired because they were not able to "validate" it on-line more than one year from the date it was issued.  The Hagys have not demonstrated that this document is expired.  In fact, it does not contain an expiration date.  It is not reasonable to conclude that simply because a document cannot be validated on-line, it has expired.  The Green Tree Defendants have submitted valid evidence to the contrary, and the Court accepts that submission.  Thus, this Court will consider the documents as evidence that Green Tree Servicing LLC is the current holder of the note.

### III. Order

For the foregoing reasons, the Court concludes that the arbitration clause contained in the promissory note executed by the Hagys in favor of the Green Tree Defendants is valid and enforceable.  Therefore, the Court grants the motions to stay proceeding and compel arbitration (Doc. #15, #38).  All claims against the Green Tree Defendants are stayed pending the completion of the arbitration.  This order has no effect on the Hagys' ability to proceed with their claims against the remaining defendants.

/s/ Terence P. Kemp
United States Magistrate Judge