```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION

James R. Hagy, III, et al.,    :

        Plaintiffs,            :

    v.                         :    Case No. 2:11-cv-530

                               :
Demers & Adams, LLC, et al.,        Magistrate Judge Kemp
                               :
        Defendants.
```

                        OPINION AND ORDER

     This matter is before the Court on the motion for summary
judgment filed by Defendants Demers & Adams, LLC and David J.
Demers ("the Law Firm Defendants")(Doc. #65), and the cross-
motion for partial summary judgment filed by Plaintiff James R.
Hagy, III, on behalf of himself and Patricia R. Hagy[1] ("the
Hagys") (Doc. #83).  Also before the Court are the Hagys' motions
to continue discovery deadlines and extend summary judgment
deadlines (Docs. ##59, 70), and the motion to quash filed by
Green Tree Servicing, LLC ("Green Tree") (Doc. #60).  For the
reasons that follow, this Court grants in part and denies in part
the Law Firm Defendants' motion for summary judgment, grants the
Hagys' partial motion for summary judgment, denies the Hagys'
motions to continue discovery deadlines and extend summary
judgment deadlines, and grants Green Tree's motion to quash the
subpoena.

                        I. Background

     This case arises from a foreclosure action initiated by the
Law Firm Defendants on behalf of Green Tree against the Hagys.
Most of the facts of this case are undisputed.  The minor

---

[1] On February 9, 2012, this Court granted James R. Hagy's
motion requesting that he be substituted for his wife, Patricia
R. Hagy, following Mrs. Hagy's death.  (Doc. #47).

disputes of fact are not relevant to the outcome of this case, and they are set forth below for purposes of background only.

On September 26, 2002, the Hagys executed a fixed-rate note and mortgage for the purchase of a mobile home, securing payment of that note with Conseco Finance Servicing Corp. ("Conseco"). Conseco was subsequently converted to Green Tree. On April 28, 2010, the Law Firm Defendants filed a foreclosure action against the Hagys on behalf of Green Tree in the Carroll County Court of Common Pleas. (Doc. #18-1).

There appears to be some disagreement between the parties as to whether Ms. Hagy then called the Law Firm Defendants and asked whether some type of settlement could be reached, or whether she talked to someone at Green Tree about settlement. (Doc. #69 at 43-45; Doc. #67 at 37-39). Either way, on June 8, 2010, David Demers sent the Hagys a letter and warranty deed in lieu of foreclosure. (Doc. #65, Ex. C). The June 8 letter stated in relevant part, "This letter is to advise you that my office has been retained to represent Green Tree . . . in regards to your delinquent account. . . . In return for executing the Deed in Lieu Green Tree has advised me that it will waive any deficiency balance." (Id.).

On June 24, 2010, the Hagys signed the warranty deed in lieu of foreclosure. (Doc. #18, Ex. 4). On June 28, 2010, Green Tree confirmed to Mr. Demers that Green Tree would not seek a deficiency balance if the Hagys signed the deed in lieu of foreclosure. (Doc. #65, Ex. F). On June 30, 2010, Mr. Demers confirmed in a letter to the Hagys' counsel, James Sandy, Esq., that he had received the warranty deed in lieu of foreclosure and that in return for the Hagys "executing the Warranty Deed in Lieu of Foreclosure Green Tree will not attempt to collect any deficiency balance which may be due and owing after the sale of the collateral." (Id., Ex. E).

2

On July 19, 2010, the Law Firm Defendants dismissed the foreclosure complaint. (Doc. #18, Ex. 2). After the warranty deed in lieu of foreclosure was executed, Green Tree began contacting the Hagys by telephone for the collection of an alleged deficiency. (Doc. #67 at 25-32; Doc. #69, Ex. 12).

On June 15, 2011, the Hagys filed this case against the Law Firm Defendants and Green Tree alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692, *et seq.*, the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. §§1345.01 *et seq.*, and common law invasion of privacy. On December 7, 2011, this Court granted the Law Firm Defendants' motion to dismiss the Hagys' claims under 15 U.S.C. §1692g on the grounds that those claims were based on the June 8 letter and thus were barred by the FDCPA's one-year statute of limitations. (Doc. #42). On February 2, 2012, this Court granted Green Tree's motion to compel arbitration and stay the case against the Green Tree defendants. (Doc. #44).

The Court now turns to the pending motions. In their motion for summary judgment, the Law Firm Defendants argue that 15 U.S.C. §1692f(6) is the only FDCPA provision applicable to them because they sought only to foreclose on a security interest, rather than to collect a debt. (Doc. #65 at 5-9). Because the Hagys have not alleged a violation of §1692f(6), the Law Firm Defendants assert that they are entitled to summary judgment on the Hagy's FDCPA claims. (<u>Id.</u>) Alternatively, the Law Firm Defendants argue that, even assuming that they are subject to the entirety of the FDCPA, the June 30 letter was not an attempt to collect a debt and thus does not violate any provision of the statute. (<u>Id.</u> at 8.) Finally, the Law Firm Defendants argue that they did not violate the OCSPA because they never made a false or deceptive communication. (<u>Id.</u> at 10.)

In their cross-motion, the Hagys argue that they are

entitled to judgment in their favor because the Law Firm Defendants are debt collectors within the meaning of the FDCPA, and their failure to provide the mandatory warning in the June 30 letter violated the statute. (Doc. #83 at 6-7, 13.) The Hagys further argue that they are entitled to summary judgment on their OCSPA claim because the violation of the FDCPA arising from the June 30 letter results in a valid claim under the OCSPA. (<u>Id.</u> at 13.) The Hagys also contend that they are entitled to judgment as a matter of law on the OCSPA claim based on the June 8 letter, despite the fact that claims based on that letter are barred by the statute of limitations under the FDCPA. (<u>Id.</u> at 9-13.)

The Court first considers the cross-motions for summary judgment. In particular, the Court first examines the motions as they pertain to the Hagy's claims under the FDCPA and next turns to the claims arising under the OCSPA. Finally, the Court considers the motions to continue discovery and summary judgment deadlines and the motion to quash.

## II. <u>Motion for Summary Judgment Standard</u>

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed.R.Civ.P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after

4

completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant cross-motions must be decided.

### III. Discussion

"Congress enacted the FDCPA in order 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  Federal Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 508 (6th Cir. 2007) (quoting 15 U.S.C. §1692(e)).  The FDCPA is "extraordinarily broad" and was crafted in response to what Congress perceived "to be a widespread problem." Frey v. Gangwish, 970 F.2d 1516, 1521 (6th Cir. 1992).  The FDCPA is a "strict liability" statute, and a consumer may recover damages under the statute even if he or she suffered no actual damages. See Federal Home Loan Mortgage Corp., 503 F.3d at 513.

The Hagys allege that the Law Firm Defendants violated the FDCPA by failing to "consummate the deed in lieu settlement with Green Tree" in violation of 15 U.S.C. §§1692e and/or 1692f,

engaging in conduct the natural consequence of which is to "harass and/or oppress" in violation of 15 U.S.C. §1692d, using "false, deceptive, and/or misleading" representations or means in connection with the collection of any debt in violation of 15 U.S.C. §1692e, and failing to provide the mandatory notices in violation of 15 U.S.C. §1692e(11). For the reasons set forth below, the first three of these allegations appear to be readily resolved on summary judgment, leaving only §1692e(11), the mandatory notice provision, as a separate basis for liability against the Law Firm Defendants under the FDCPA.

A. Alleged Liability Under §§1692d, 1692e (Unrelated to the Mandatory Notice Provision of Subsection (11)), and 1692f

The Hagys allege that the Law Firm Defendants violated 15 U.S.C. §§1692d, 1692e, and 1692f. The Law Firm Defendants moved for summary judgment as to each of these claims. (Doc. #89 at 3). Under §1692d, a debt collector may not engage in any conduct the natural consequence of which is to "harass, oppress, or abuse" any person in connection with the collection of a debt. The statute's examples of such behavior include threatening violence, using obscene or profane language, publishing a list of consumers who allegedly refuse to pay debts, advertising the sale of a debt to coerce payment, calling someone repeatedly, or calling someone without disclosing the caller's identity. 15 U.S.C. §1692d(1)-(6). Tactics qualifying as a violation under §1692d are those that "embarrass, upset, or frighten" a debtor or concern "coercion, scare tactics, or fraud." Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006).

Under §1692e, a debt collector may not use any "false, deceptive, or misleading" representation or means in connection with the collection of any debt. The Court of Appeals has held that a collection notice is deceptive if it can have two or more different meanings, one of which is inaccurate. See Federal Home

Loan Mortg. Corp., 503 F.3d at 512.  Each example of this type of behavior listed by §1692e (save subsection (11)) requires some type of affirmative false representation or false implication made by the debt collector.  15 U.S.C. §1692(e)(1)-(10), (12)-(16).

Finally, under §1692f, a debt collector may not use any "unfair or unconscionable" means to collect or attempt to collect any debt.  Examples of violations include collecting amounts not expressly authorized by the agreement or permitted by law, depositing or threatening to deposit postdated checks prior to the date on the check, or communicating with a consumer regarding a debt by post card.  15 U.S.C. §1692f(1),(4),(7).

There is no evidence in the record to suggest that the Law Firm Defendants engaged in any behavior that would constitute a violation of these sections of the FDCPA.  The facts relevant to these claims are undisputed.  The Law Firm Defendants communicated to the Hagys that the warranty deed in lieu would satisfy the entire debt and that Green Tree would not seek any deficiency.  The Law Firm Defendants have produced emails from Green Tree confirming that the Law Firm Defendants were told that Green Tree would not attempt to collect the deficiency from the Hagys if they signed the deed in lieu.  The record reflects that Law Firm Defendants accurately conveyed the information they had at the time to the Hagys.

Although the amended complaint alleges that the Law Firm Defendants violated §§1692e and/or 1692f by failing to "consummate the deed in lieu settlement with Green Tree," the undisputed evidence produced by the Law Firm Defendants demonstrates that Green Tree was aware of the deed in lieu and directed the Law Firm Defendants to tell the Hagys that no deficiency would be sought.  Thus, the Law Firm Defendants acted under Green Tree's authority when producing the deed in lieu to

7

the Hagys and in agreeing that no deficiency would be sought. The record suggests that it was Green Tree, not the Law Firm Defendants, who then allegedly failed to honor that agreement.

The remaining allegations in the complaint simply restate the language of the statute, and the evidence submitted by the Hagys on summary judgment gives this Court no reason to believe that the Law Firm Defendants engaged in any conduct that would violate §§1692d, 1692e (save subsection (11)), or 1692f. No reasonable person, not even the least sophisticated consumer, would have any reason to believe the Law Firm Defendants acted in violation of these sections. See Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 592 (6th Cir. 2009)(describing least sophisticated consumer standard).[2] Thus, the Law Firm Defendants are entitled to summary judgment on the Hagys' claims under §§1692d, 1692e (with the exception of subsection (11)), and 1692f.

### B. Alleged Failure to Provide the Mandatory Notice in Violation of §1692e(11)

The sole remaining FDCPA claim arises under 15 U.S.C. §1692e, which states that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Examples of conduct that violates §1692e are set forth in the statute and include "the failure to disclose in subsequent communications that the communication is from a debt collector . . . ." 15 U.S.C. §1692e(11). The Hagys argue that the Law Firm Defendants violated §1692e(11) by sending the June 30 letter to their attorney, James Sandy, without putting in the required disclosure that the communication was from a debt collector. Before the

---

[2] See also this Court's December 2011 Order on the motion to dismiss for a detailed discussion of the least sophisticated consumer standard. (Doc. #42 at 15-16).

Court can resolve this issue, it must first analyze whether §1692e applies to the Law Firm Defendants and the June 30 letter.

1. Debt Collector

Section 1692e applies only to debt collectors.  Under 15 U.S.C. §1692a(6) a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . ."  The statute specifies that the term includes those individuals who enforce security interests for purposes of section 15 U.S.C. §1692f(6), a section the Hagys have not alleged that the Law Firm Defendants violated.  The Court of Appeals has held that, because the statute specifically mentions §1692f(6) in relation to those enforcing security interests only, "an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition of a debt collector under the FDCPA" except for purposes of §1692f(6).  <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693, 700-701 (6th Cir. 2003).

Here, the Law Firm Defendants argue they are not debt collectors under the statute because they simply enforce security interests instead of collecting debts, based on the language quoted above from <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693 (6th Cir. 2003).  More specifically, the Law Firm Defendants argue that, because they were enforcing a security interest against the Hagys through foreclosure, they are exempt from the definition of debt collector.

Some cases from this Circuit's district courts have found that seeking a deficiency judgment in a foreclosure action goes beyond enforcing a security interest and constitutes debt collection activity for purposes of the FDCPA.  <u>See, e.g.</u>, <u>Goodson v. Shapiro & Kirsch, L.L.P.</u>, No. 1:11-0031, 2012 U.S.

9

Dist. LEXIS 9739, at *7-8 (M.D. Tenn. Jan. 27, 2012) (finding it
significant for purposes of determining whether defendant was a
debt collector that plaintiff had alleged, among other things,
that the defendant went beyond enforcement of security interests
and threatened or filed deficiency judgments); see also Hunter v.
Washington Mut. Bank, No. 2:08-cv-069, 2010 U.S. Dist. LEXIS
59917, at *12 (E.D. Tenn. June 16, 2010)(finding a genuine issue
of material fact as to whether defendant was a debt collector
where plaintiff produced evidence that defendant engaged in,
among other things, deficiency judgments and suits on notes);
Stamper v. Wilson & Assoc., P.L.L.C., No. 3:09-cv-270, 2010 U.S.
Dist. LEXIS 31770, at *17 (E.D. Tenn. Mar. 31, 2010)
(distinguishing judicial foreclosures from non-judicial
foreclosures and noting that non-judicial foreclosures do not
involve deficiency judgments against the debtor and thus are not
debt collection activity). Other courts, however, have found that
mortgage foreclosure is not debt collection. See, e.g., Rosado
v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) (finding
that security enforcement activities, including those involving
real property, fall outside the scope of the FDCPA because they
are not debt collection practices). To the extent that there
exists a conflict in the decisions, the Court of Appeals
clarified the issue recently in Glazer v. Chase Home Finance LLC,
__ F.3d __, 2013 WL 141699 (6th Cir. Jan. 14, 2013). (Doc. #93,
Ex. 1).

     In Glazer, the plaintiff brought suit against a mortgage
servicing company and the lawyers it hired to foreclose on
property that the plaintiff inherited. Id. at *1. Among the
allegations were that the defendants violated various provisions
of the FDCPA, all of which apply solely to "debt collectors" as
defined in the statute. Id. at *2. In finding that the
defendants were debt collectors, the Court reasoned:

> *[E]very* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e.*, forcing a settlement) or compulsion (*i.e.*, obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt). As one commentator has observed, the existence of redemption rights and the potential for deficiency judgments demonstrate that the purpose of foreclosure is to obtain payment on the underlying home loan. Such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment.

Id. at *6 (emphasis in original). Thus, Glazer holds that mortgage foreclosure is debt collection under the FDCPA. Id.

In Glazer, the court specifically rejected the position that 15 U.S.C. §1692f(6) is the only FDCPA provision applicable to lawyers engaged in mortgage foreclosure on the grounds that those individuals seek only to foreclose on a security interest, rather than to collect a debt. In doing so, the court stated that §1692(f) applies "to those whose *only* role in the debt collection process is enforcement of a security interest." Id. at *9 (emphasis in original) (quoting Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 378 (4th Cir. 2006)). The court found that provision to be applicable to repossession agencies and their agents, who typically enforce the security interest by repossessing or disabling the property in the debtor's absence. Id. Such was the case in Montgomery, the decision relied upon by the Law Firm Defendants, where the defendant "was seeking recovery of the BMW that was posted as collateral for the personal loan" and the defendant "was simply acting as a repossession agency when it seized his mother's BMW." Montgomery, 346 F.3d at 701. In contrast, lawyers engaged in foreclosure proceedings necessarily communicate with the debtor regarding the debt during the proceedings. See Glazer, 2013 WL 141699, at *9.

Under the relevant law, the Law Firm Defendants have gone

11

beyond simply enforcing security interests and have sought to
collect debts.  Hence, there remains no question that the Law
Firm Defendants are debt collectors under the FDCPA.  If the Law
Firm Defendants engaged in these activities with enough frequency
to constitute regular debt collection activity under the statute,
they are considered debt collectors under the FDCPA.

In order to be covered by the FDCPA's definition of "debt
collector," the Law Firm Defendants must either have debt
collection as the principal purpose of their business or
regularly engage in debt collection. "[R]egularly" engaging in
debt collection activity under the FDCPA means having more than
"occasional" involvement.  Schroyer v. Frankel, 197 F.3d 1170,
1174 (6th Cir. 1999).  "[F]or a court to find that an attorney or
law firm 'regularly' collects debts for purposes of the FDCPA, a
plaintiff must show that the attorney or law firm collects debts
as a matter of course for its clients or for some clients, or
collects debts as a substantial, but not principal, part of his
or its general law practice." Id. at 1176. "Whether a party
'regularly' attempts to collect debts is determined by the volume
or frequency of its debt-collection activities." Stamper, 2010
U.S. Dist. LEXIS 31770 at 21; See also Derenick v. Cohn, No.
1:04-cv-11, 2004 U.S. Dist. LEXIS 25548, at *9-11 (E.D. Tenn.
Aug. 10, 2004)(finding a genuine issue of material fact as to
whether defendant was a debt collector within the meaning of the
FDCPA).

In order to identify whether an attorney is acting as a debt
collector, courts can look to the volume of the attorney's
collection activities, the frequent use of a particular debt
collection document or letter, whether there exists a steady
relationship between the attorney and the collection agency or
creditor represented, what portion of the overall caseload debt
collection cases constitute, and what percentage of revenues are

12

attributable to debt collection activities.  See Schroyer, 197
F.3d at 1176.  Even where debt collection constitutes a minor
portion of a law practice, liability may still lie where the
defendant has a continuing relationship with a client who is
substantially involved in debt collection.  See id.

     In Schroyer, the Court of Appeals found that the defendants
were not debt collectors where only a small percentage of the
their overall practice consisted of debt collection cases and one
of the firms did not employ individuals full-time for the purpose
of collecting debts.  The Schroyer plaintiffs failed to offer
evidence demonstrating that fees generated or collected from debt
collection activities constituted a great portion of the overall
revenues and failed to offer proof that defendants handled debt
collection cases as part of an ongoing relationship with a major
creditor or business client with substantial debts for
collection.  While the facts offered by the Schroyer plaintiffs
indicated that the defendants' performance of debt collection
work was not unusual, it did not support a claim that defendants
were "in the business" of debt collection.  Id. at 1176-77.
Rather, the defendants' debt collection activity was merely
incidental to their larger practice.  Id.

     In this case, although the Law Firm Defendants have sworn
that they do not, on behalf of third parties, engage in consumer
collections, send letters requesting payments on consumer debts,
collect on a consumer debts, or attempt to collect deficiency
balances, they admit that the foreclosure action against the
Hagys, where a monetary judgment was sought in addition to
foreclosure, is a typical example of their practice.  Moreover,
the Hagys have produced evidence indicating that in several cases
filed in Tuscarawas, Franklin, and Coschocton Counties Mr. Demers
sought deficiency judgments in foreclosure cases.  (Docs. ##75,
84).  In addition, Mr. Demers admitted in his deposition that he

13

has represented Green Tree for 20 years, has finalized approximately 50 deed in lieu agreements before June 8, 2010 pursuant to Green Tree's "standing position," and has filed at least 100 foreclosures on its behalf. (Doc. #69-1, pp. 46-47, 61).

Even without particular information concerning what percentage of revenues the Law Firm Defendants derive from debt collection activities, it appears from the undisputed evidence that the Law Firm Defendants have been regularly engaged in debt collection. The record reflects that the Law Firm Defendants have a long-standing relationship with Green Tree, a company that presumably has many overdue accounts, and they negotiate deeds in lieu on Green Tree's behalf on a regular basis. Based upon these facts, the Court finds there is sufficient record evidence to demonstrate that the Law Firm Defendants are regularly engaged in debt collection activities and therefore are debt collectors within the meaning of the FDCPA.

### 2. Made in Connection with a Debt

In the Order on the Law Firm Defendants' motion to dismiss, this Court determined that the June 30 letter was sent "in connection with the collection of any debt" as required by §1692e because the "animating purpose of the foreclosure action" and the settlement discussions contained in the June 30 letter "was to induce the Hagys to pay the Green Tree defendants, at least in part, on the unpaid note." (Doc. #42 at 13-14). The Court also found that the June 30 letter was "part of a strategy to make payment more likely." (Id.) That is, the warranty deed in lieu of foreclosure allowed the Law Firm Defendants to collect at least part of the debt owed to Green Tree and settle the foreclosure action. (Id.)

In their motion for summary judgment, the Law Firm Defendants again argue that the June 30 letter was not made in

connection with a debt, but they do not raise any new legal arguments which would cause this Court to change the findings set forth in the Order on the motion to dismiss. Instead, the Law Firm Defendants simply offer evidence that the Hagys' attorney, who received the letter, did not view it as an attempt to collect a debt. Such evidence, without legal reasoning, is not sufficient to change this Court's decision.

The Law Firm Defendants also point to the factors from §1692g(a) that must be included in a debt collector's initial communication and argue that including such factors would have rendered the June 30 letter nonsensical.[3] According to its plain language, §1692g relates to initial communications from debt collectors. See 15 U.S.C. §1692g. As this Court has observed previously, the June 30 letter was not the initial communication from the Law Firm Defendants; rather, the June 8, 2010 letter was. However,15 U.S.C. §1692e(11) requires that in subsequent communications made in connection with a debt, the debt collector must disclose that the communication is from a debt collector. This Court finds nothing nonsensical about including such language in the June 30 letter.

Because this Court finds that the Law Firm Defendants are debt collectors and that the June 30 communication was made in connection with a debt, the Law Firm Defendants violated the FDCPA by failing to include in the letter that the communication was from a debt collector. Thus, the Hagys' motion for summary judgment is granted on the claims related to §1692e(11).

---

[3] In their reply brief, the Law Firm Defendants also make the assertion that the June 30 letter was not in violation of the FDCPA because the communication was to an attorney. (Doc. #80 at 2-3). The Court addressed this argument previously in its Order on the motion to dismiss and found it to be without merit. (Doc. #42 at 11). As such, the Court shall not revisit the issue here.

C. Alleged Violations of the OCSPA

The Court now turns to the Hagys' OCSPA claims.  The Hagys allege that the Law Firm Defendants knowingly committed unfair, deceptive, and unconscionable acts and/or practices in violation of O.R.C. §§1345.02 and/or 1345.03, and they are therefore entitled to relief under O.R.C. §1345.09. (Amend. Compl., #18, ¶¶28-31).

Under O.R.C. §1345.02(A), "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  Section 1345.03, which pertains to unconscionable acts or practices, provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction." O.R.C. §1345.03(A).  Both sections indicate that such acts or practices violate the section "whether [they] occur[] before, during, or after the transaction."  O.R.C. §§1345.02(A) and 1345.03(A).

In its Order on the motion to dismiss, this Court determined that the Hagys adequately alleged that the Law Firm Defendants are "suppliers" within the meaning of the OCSPA.  (Doc. #42 at 20).  As such, this Court need only consider whether they committed "unfair or deceptive" or "unconscionable" acts or practices in connection with the consumer transaction.  O.R.C. §§1345.02(A) and 1345.03(A).  As the Court also noted in the Order on the motion to dismiss, the OCSPA has a two-year statute of limitations, allowing both the June 8 letter and the June 30 letter from the Law Firm to form the basis of the OCSPA violation.  (Doc. #42 at 17).

The Hagys argue, inter alia, that a violation of the FDCPA necessarily results in a violation of the OCSPA.  (Doc. #83 at 13).  In particular, the Hagys argue that the Law Firm Defendants' failure to disclose that they are debt collectors in the June 30 letter violates both the FDCPA and the OCSPA.  Id.

16

As to the June 8 letter, the Hagys argue that the Law Firm
Defendants violated 15 U.S.C. §1692(e)(11) by failing to disclose
that they are debt collectors, and by failing to provide the
"mini-Miranda warning" that they are "attempting to collect a
debt and that any information obtained will be used for that
purpose." (Doc. #83 at 10).  The Hagys likewise allege that the
Law Firm Defendants violated §1692(g) of the FDCPA by failing to
provide them with what is known as the "civil Miranda" warning
within five days of the June 8 letter.[4]  (Id. at 11).

Courts have that a violation of the FDCPA also constitutes a
violation of the OCSPA.  See Becker v. Montgomery, Lynch, No.
Civ. A 1:02CV874, 2003 WL 23335929, at *2 (N.D. Ohio Feb. 26,
2003); see also Federal Home Loan Mortg. Corp. v. Lamar, 503 F.3d
504, 513 (6th Cir. 2007) (finding that absent a FDCPA violation,
there was nothing to sustain the alleged OCSPA claim). In Becker
v. Montgomery, Lynch, the court noted that the FDCPA and OCSPA
share the common purpose of prohibiting both unfair and deceptive
acts.  Id.  Accordingly, the Becker court held that "any
violation of any one of the enumerated sections of the FDCPA is
necessarily an unfair and deceptive act or practice in violation
of 2 R.C. § 1345.02 and/or § 1345.03." Id.

Although the Law Firm Defendants acknowledge that "various
violations of the FDCPA will also violate the OCSPA," they argue
that the "overlapping language and purpose in the statutes" does
not result in "a wholesale incorporation of one statute into
another by judicial fiat." (Doc. #87 at 2).  It is true that a
violation of the FDCPA is not necessarily a violation of the

---

[4] The "civil Miranda" warning in §1692(g) requires that,
within five days after the initial communication, the debt
collector send written notice to the consumer containing certain
information regarding the debt, including the amount of the debt,
the name of the creditor to whom the debt is owed, and how to
dispute the validity of the debt.  See 15 U.S.C. §1692(g).

OCSPA in all cases.  See, e.g., Foster v. D.B.S. Collection Agency, 463 F. Supp.2d 783, 810 n. 45 (S.D. Ohio 2006) (noting that "Ohio courts have not spoken in unison on the issue of federal regulatory statute incorporation").  Courts in the Sixth Circuit, however, generally have interpreted the OCSPA and the FDCPA as prohibiting the same conduct.  See Munger v. Deutsche Bank, No. 1:11-CV-00585, 2011 WL 2930907, at *20 (N.D. Ohio July 18, 2011) ("Although the types of transactions that the OCSPA and the FDCPA regulate are not always co-extensive (the OCSPA is much broader), courts in this Circuit have generally interpreted the Ohio statute and the FDCPA as prohibiting the same acts").

As set forth above, Defendants violated §1692e(11) of the FDCPA by failing to include in June 30 letter that the communication was from a debt collector.  Consistent with the Becker decision, the Court finds that this FDCPA violation is also an OCSPA violation.  Further, had the June 8 letter not been barred by the one-year statute of limitations applicable to FDCPA claims, this Court would have found that Law Firm Defendants' conduct surrounding the letter also would have violated the statute.

The June 8 letter was made "in connection with the collection of any debt" as required by §1692e because the "animating purpose of the foreclosure action" and the settlement discussions contained in both the June 8 and June 30 letters "was to induce the Hagys to pay the Green Tree defendants, at least in part, on the unpaid note" and was "part of a strategy to make payment more likely." (Doc. #42 at 13-14).  The Law Firm Defendants do not dispute that the June 8 letter fails to disclose that they are debt collectors and fails to contain the mini-Miranda warning.  The Law Firm Defendants likewise do not dispute that they failed to provide the Hagys with the "civil Miranda" warning within five days of the June 8 letter.

18

In this case, the Hagys' claims are based on the Law Firm Defendants' alleged failure to comply with consumer warning provisions identical and similar to the provision at issue in Becker. The Law Firm Defendants' failure to comply with those provisions is at least unfair under the statute, giving rise to a violation of §1345.02(A). Because the OCSPA is a remedial statute and should be given liberal construction and broad application, see Foster v. D.B.S. Collection Agency, No. 01-CV-514, 2008 WL 755082, at *10 (S.D. Ohio Mar. 20, 2008), the Court finds that the Law Firm Defendants' use of the letter and subsequent failure to provide the civil Miranda warning violated the OCSPA. The fact that the June 8 letter is time barred under the FDCPA does not alter this outcome. For these reasons, the Hagys' motion for summary judgment is granted as to this claim.

D. The Hagys' Motions to Continue Discovery and Summary Judgment Deadlines (Docs. #59, #70) and Green Tree's Motion to Quash (Doc. #60)

The Hagys have filed motions asking this Court to extend discovery deadlines and motion for summary judgment deadlines in this case (Doc. ##59, 70) because they needed additional time to resolve discovery disputes. Specifically, they sought additional information from the Law Firm Defendants and issued a subpoena to Green Tree. Green Tree has filed a motion to quash that subpoena (Doc. #60).

This Court previously resolved the discovery dispute concerning the Law Firm Defendants. (Doc. #71). As to the Hagys' request to seek additional information from Green Tree, that request is denied. The Hagys argue that the Law Firm Defendants have produced an email communication demonstrating that Green Tree told the Law Firm Defendants that the warranty deed in lieu of foreclosure should include specific language about Green Tree's promise not to collect a deficiency. Because this language was not present in the deed in lieu, the Hagys

19

argue that additional discovery might reveal facts that would demonstrate the Law Firm Defendants violated either §§1692d, 1692e, or 1692f by leaving the language out.

Even if discovery indeed revealed that the Law Firm Defendants purposefully left out that language from the deed in lieu, the Hagys have given this Court no reason to believe such behavior would violate the Act.  It is undisputed that the Law Firm Defendants told the Hagys that the deficiency balance would be waived and did not misrepresent the facts.  The Law Firm Defendants failure to include this term did not result in any action the natural consequence of which is to harass or oppress the Hagys, nor was the behavior unconscionable.  The record reflects that the Law Firm Defendants adequately informed the Hagys of the terms of the agreement as authorized by Green Tree. The Hagys have given this Court no reason to believe that additional discovery from Green Tree is likely to lead to the discovery of admissible evidence.  As such, this Court sees no reason to extend these deadlines or require Green Tree to appear for additional discovery.  The motion to quash (Doc. #60) is granted and the Hagys motions for extension of time are denied (Docs. ##59, 70).

IV. <u>Conclusion</u>

For the reasons stated above, the Law Firm Defendants' motion for summary judgment is granted in part and denied in part (Doc. #65), the Hagys' partial motion for summary judgment is granted (Doc. #83), the Hagys' motions to extend discovery deadlines and motion for summary judgment deadlines (Doc. ##59,

20

70) are denied, and Green Tree's motion to quash (Doc. #60) is granted.

                    /s/ Terence P. Kemp
                    United States Magistrate Judge