IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James R. Hagy, III, et al.,      :

      Plaintiffs,               :

   v.                            :      Case No. 2:11-cv-530

                      :

Demers & Adams, LLC, et al.,     :      Magistrate Judge Kemp

      Defendants.

OPINION AND ORDER

    This matter is before the Court on the motion for an award
of statutory damages, attorney fees, and costs filed by
Plaintiff James R. Hagy, III, on behalf of himself and Patricia
R. Hagy[1] ("the Hagys") against Defendants Demers & Adams, LLC and
David J. Demers ("the Law Firm Defendants"). (Doc. #101). For
the reasons that follow, the Court will grant the motion for
statutory damages, attorney fees, and costs, but it will award
the relevant amounts as set forth below.

I. Background

    This case arises from a foreclosure action initiated by the
Law Firm Defendants on behalf of Green Tree Servicing LLC ("Green
Tree") against the Hagys. On September 26, 2002, the Hagys
executed a fixed-rate note and mortgage for the purchase of a
mobile home and real property, securing payment of that note with
Conseco Finance Servicing Corp. ("Conseco"). Conseco was
subsequently converted to Green Tree. On April 28, 2010, the Law
Firm Defendants filed a foreclosure action against the Hagys on
behalf of Green Tree in the Carroll County Court of Common Pleas.
(Doc. #18-1).

---

    [1]On February 9, 2012, this Court granted James R. Hagy's
motion requesting that he be substituted for his wife, Patricia
R. Hagy, following Mrs. Hagy's death. (Doc. #47).

There is some disagreement between the parties as to whether Ms. Hagy then called the Law Firm Defendants and asked whether some type of settlement could be reached, or whether she talked to someone at Green Tree about settlement. (Doc. #69 at 43-45; Doc. #67 at 37-39). Either way, on June 8, 2010, David Demers sent the Hagys a letter and warranty deed in lieu of foreclosure. (Doc. #65, Ex. C). The June 8 letter stated in relevant part, "This letter is to advise you that my office has been retained to represent Green Tree . . . in regards to your delinquent account. . . . In return for executing the Deed in Lieu Green Tree has advised me that it will waive any deficiency balance." Id.

On June 24, 2010, the Hagys signed the warranty deed in lieu of foreclosure. (Doc. #18, Ex. 4). On June 28, 2010, Green Tree confirmed to Mr. Demers that Green Tree would not seek a deficiency balance if the Hagys signed the deed in lieu of foreclosure. (Doc. #65, Ex. F). On June 30, 2010, Mr. Demers confirmed in a letter to the Hagys' counsel, James Sandy, Esq., that he had received the warranty deed in lieu of foreclosure and that in return for the Hagys "executing the Warranty Deed in Lieu of Foreclosure Green Tree will not attempt to collect any deficiency balance which may be due and owing after the sale of the collateral." Id., Ex. E.

On July 19, 2010, the Law Firm Defendants dismissed the foreclosure complaint. (Doc. #18, Ex. 2). After the warranty deed in lieu of foreclosure was executed, Green Tree began contacting the Hagys by telephone for the collection of an alleged deficiency. (Doc. #67 at 25-32; Doc. #69, Ex. 12).

On June 15, 2011, the Hagys filed this case against Green Tree and its employee Kevin Winehold ("the Green Tree Defendants") and the Law Firm Defendants alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692, et seq., the Ohio Consumer Sales Practices Act ("OCSPA"),

O.R.C. §§1345.01 *et seq.*, and common law invasion of privacy.  On December 7, 2011, this Court granted the Law Firm Defendants' motion to dismiss the Hagys' claims under 15 U.S.C. §1692g on the grounds that those claims were based on the June 8 letter and thus were barred by the FDCPA's one-year statute of limitations. (Doc. #42).  On February 2, 2012, this Court granted the Green Tree Defendants' motion to compel arbitration and stay the case against them. (Doc. #44).

On February 5, 2013, the Court issued an Opinion and Order granting in part and denying in part the motion for summary judgment filed by the Law Firm Defendants (Doc. #65) and granting a cross-motion for summary judgment filed by the Hagys (Doc. #83).  (Doc. #95).  In doing so, the Court found the Law Firm Defendants to be in violation of the FDCPA and the OCSPA.  Id.

In the Opinion and Order, the Court first examined the Law Firm Defendants' alleged liability under 15 U.S.C. §§1692d, 1692e (unrelated to the notice provision of subsection (11)), and 1692f and found that there was "no evidence in the record to suggest that the Law Firm Defendants engaged in any behavior that would constitute a violation of these sections of the FDCPA."  Id. at 7.  Consequently, the Court granted summary judgment to the Law Firm Defendants with respect to the Hagys' claims under 15 U.S.C. §§1692d, 1692e (unrelated to the notice provision of subsection (11)), and 1692f.

The Court next turned to the Law Firm Defendants alleged failure to provide the mandatory notice in violation of 15 U.S.C. §1692e(11) in the June 30 letter that they sent to Mr. Sandy, the Hagys' attorney.  The Court found that, because the Law Firm Defendants were debt collectors for purposes of the statute and the June 30 communication was an attempt to collect a debt, the Law Firm Defendants violated the FDCPA by failing to include in the letter that the communication was from a debt collector.

Thus, the Court granted the Hagys' motion for summary judgment on the claims related to §1692e(11).

The Court then examined the Hagys' claims under the OCSPA, finding that the Law Firm Defendants' conduct in violation of 15 U.S.C. §1692e(11), namely their failure to specify in the June 30 letter that it was from a debt collector, also violated the OCSPA. The Court likewise found that the Law Firm Defendants' use of the June 8 letter and subsequent failure to provide the civil Miranda warning violated the OCSPA. In making this determination, the Court noted that "[t]he fact that the June 8 letter is time barred under the FDCPA does not alter this outcome." Id. at 19. Accordingly, the Court granted the Hagys' motion for summary judgment as to this claim.

Based on the foregoing, the Opinion and Order resolved each of the claims against the Law Firm Defendants. There are no remaining liability issues as to those Defendants. The proceedings against the Green Tree Defendants remain stayed pending arbitration.

On April 3, 2013, the Hagys filed the instant motion seeking an award of statutory damages, attorney fees, and costs. (Doc. #101). On April 17, 2013, the Law Firm Defendants filed a memorandum in opposition to the Hagys' motion, opposing the award of statutory damages and attorney fees in the amounts requested by the Hagys. (Doc. #102). On April 24, 2013, the Hagys filed a reply brief in support of their motion. (Doc. #103). Finally, on May 5, 2013, the Law Firm Defendants filed a supplemental memorandum is response to the Hagys' opposition. (Doc. #104).

On May 16, 2013, the Law Firm Defendants filed a motion for reconsideration, asking this Court to reconsider the portion of its February 5 Opinion and Order relating to the OCSPA claims in light of a recent decision by the Ohio Supreme Court, namely Anderson v. Barclay's Capital Real Estate, Inc., Slip Opinion No.

4

2013-Ohio-1993, decided May 14, 2013.  (Doc. #105).  Upon review
of the relevant briefs and case law, the Court denied the motion
and granted the Hagys leave to file a supplemental request for
attorney fees to account for the time expended since the filing
of their motion for an award of statutory damages, attorney fees,
and costs.  Thus, the issue of damages, attorney fees, and costs
has been briefed fully and is now ripe for consideration.

## II. Discussion

The Court first considers the Hagys' request for statutory
damages under the FDCPA and the OCSPA.  Next, the Court examines
the Hagys' request for attorney fees and costs.

### A. Statutory Damages Under The FDCPA

In resolving the Hagys' motion, the Court first examines the
maximum amount of statutory damages available under the FDCPA.
In their motion, the Hagys argue that each plaintiff may recover
up to $1,000.00 in statutory damages.  The Law Firm Defendants
disagree, asserting that statutory damages under the FDCPA are
limited to $1,000.00 per proceeding and not per plaintiff.  After
resolving this issue, the Court will determine the proper award
of statutory damages in light of the particular FDCPA violation
in this case.

The motion requests the statutory maximum of $1,000.00 for
each plaintiff in this case, namely Mr. Hagy on behalf of himself
and in his capacity as a substitute for his late wife.
Consequently, the motion seeks an award of $2,000.00 in statutory
damages under the FDCPA.  Although the Hagys acknowledge that the
Court of Appeals limited statutory damages to $1,000.00 per
proceeding, rather than per violation, in Wright v. Finance
Service of Norwalk, Inc., 22 F.3d 647, 650-51 (6th Cir. 1994),
they claim that Wright is factually distinguishable.

This Court agrees.  In Wright, the district judge found the
defendant liable for multiple FDCPA violations, but held that the

plaintiff could only recover $1,000.00 in statutory damages per proceeding. Id. at 649. The Court of Appeals affirmed, holding that the FDCPA limits statutory damages to $1,000.00 per proceeding, rather than per violation. Id. at 651.

The issue in Wright, however, was not how many plaintiffs could collect statutory damages under the FDCPA in a given matter. To the contrary, the issue was whether a single plaintiff could collect the $1,000.00 maximum per violation. The Court of Appeals held that a plaintiff is limited to $1,000.00, irrespective of the number of violations. Based upon this finding, the Court of Appeals necessarily limited the amount of statutory damages to $1,000.00 per proceeding, given that there was just a single plaintiff in that case.

As noted above, there are two plaintiffs in this case. Consequently, the narrow issue before the Court, which is distinct from the issue in Wright, is whether each plaintiff may recover up to $1,000.00. At least one court within this district has found that, in cases with multiple plaintiffs, each plaintiff may recover $1,000.00 in statutory damages. See Boyce v. Attorney's Dispatch Serv., No. C-3-94-347, 1999 U.S. Dist. LEXIS 12970, at *9 (S.D. Ohio Apr. 27, 1999)(finding that "each Plaintiff is entitled to recover $1,000.00, as statutory or additional damages"). The Law Firm Defendants' reliance upon Mann v. Acclaim Financial Services, 348 F. Supp.2d 923, 926 (S.D. Ohio 2004) in support of their position is misplaced because Mann, like Wright, involved a single plaintiff and thus has no bearing on whether each plaintiff may recover $1,000.00. Cf. Dowling v. Kucker Kraus & Bruh, LLP, No. 99CIV11958RCC, 2005 WL 1337442, at *3-4 (S.D.N.Y. June 6, 2005)(finding that the cases which limit statutory damages under the FDCPA to $1,000.00 "per proceeding" involve a "lone plaintiff"). Based on the foregoing, the Court finds that each plaintiff may recover an individual

award up to $1,000.00 in statutory damages under the FDCPA.

Merely because a plaintiff may recover $1,000.00 in statutory damages under the FDCPA does not necessarily mean that the Court will award the Hagys a total of $2,000.00 in this case. In fashioning a proper award of statutory damages here, the Court must examine the particular FDCPA violation found in the context of the various factors set forth in the FDCPA. These factors include: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. . . ." 15 U.S.C. §1692k(b)(1). To reach the proper award, the Court will consider and balance each of these factors against the FDCPA's purpose, which is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 508 (6th Cir. 2007) (quoting 15 U.S.C. §1692(e)).

The Hagys argue that the Law Firm Defendants' noncompliance was frequent and persistent because "each and every communication between the Law Firm Defendants and Plaintiffs in this matter violated the FDCPA in some way." (Doc. #101 at 6). In the Opinion and Order on the cross-motions for summary judgment, however, the Court held the Law Firm Defendants liable for just one violation under the FDCPA. More specifically, the Court found the Law Firm Defendants liable for their failure to provide the mandatory notice in violation of 15 U.S.C. §1692e(11) in the June 30 letter that they sent to Mr. Sandy. The Court found that, because the Law Firm Defendants were debt collectors for purposes of the statute and the June 30 communication was an attempt to collect a debt, the Law Firm Defendants violated the

FDCPA by failing to include in the letter that the communication was from a debt collector. This conduct alone cannot be characterized as frequent and persistent. Moreover, even if the Court were to consider the Law Firm Defendants' conduct relating to the June 8 letter, which was time barred under the FDCPA, the Court would still find that the Hagys fail to establish that the noncompliance was frequent and persistent. The Hagys' broad accusations that the Law Firm Defendants' conduct was frequent and persistent are simply not borne out by evidence in the record, and the conduct relating to the June 8 letter and June 30 letter, even when considered together, does not rise to the level of frequent and persistent.

As to the nature of the noncompliance, the Hagys argue that "[i]nclusion of the disclosure and warning notices required by 15 U.S.C. §1692e(11) . . . is one of the FDCPA's most basic and fundamental consumer protections." This Court agrees that the mandatory notice provision in 15 U.S.C. §1692e(11) serves the important purpose of eliminating abusive debt collection practices by debt collectors. For that reason, noncompliance with that provision should not to be taken lightly. Here, however, the severity of the noncompliance is somewhat mitigated by the fact that the June 30 letter was sent to the Hagys' attorney, rather than to the Hagys themselves. Although this fact does not excuse the Law Firm Defendants' conduct, which was indeed in violation of 15 U.S.C. §1692e(11), it does make the violation less egregious than it would have been had the letter been sent directly to the Hagys.

Finally, the Hagys contend that the Law Firm Defendants' noncompliance was intentional. The Hagys's argue that:

> Law Firm Defendants conducted their debt collection practices with a flagrant and openly lackadaisical disregard for consumers' FDCPA protections. To the extent that they were at all concerned about noncompliance, that concern was focused primarily on

8

> 'covering their backside' from 'frivolous litigation.'
> Yet, even this concern failed to convince Law Firm
> Defendants to adequately educate themselves about the
> FDCPA or comply with even the most basic of FDCPA
> protections found in 15 U.S.C. § 1692(e)(11).

Id. at 9 (citation omitted). The Law Firm Defendants disagree, arguing that their failure to include the mandatory notice was an "oversight" for which they are not "morally culpable." (Doc. #102 at 2).

In this case, there is no evidence to suggest that the Law Firm Defendants' failure to comply with 15 U.S.C. §1692e(11) was intentional. That is, the Hagys have not presented evidence to suggest that the Law Firm Defendants deliberately decided not to disclose in the letter that the communication was from a debt collector. Accordingly, this factor weighs in favor of awarding less than the maximum amount of statutory damages.

In sum, the Court finds that the frequency and persistence of the noncompliance, the nature of the noncompliance, and the extent to which the violation may have been intentional weigh in favor of awarding less than the maximum amount of statutory damages under the FDCPA. Balancing these factors against the important purpose served by 15 U.S.C. §1692e(11), the Court finds that an award of $500.00 per plaintiff is warranted in this case, making the total amount of statutory damages under the FDCPA in this matter $1,000.00.

### B. Statutory Damages Under The OCSPA

The Court now turns to the Hagys' request for statutory damages under the OCSPA. The Hagys argue that they are entitled to $1,200.00 in statutory damages under the OCSPA, stating that a "majority of courts" have found that "where there are separate OCSPA violations caused by separate acts, the consumer is entitled to $200.00 per violation." (Doc. #101 at 10)(citing Crye v. Smolak, 110 Ohio App.3d 505 (Franklin Cty. 1996); Merriwether

v. A-All Type Heating Airconditioning & Builders, Inc., 2002 WL
31950750 (C.P. Cuyahoga 2002); and Robie, Ohio Consumer Law
(West), §2:131 at 102-103 (2012-2013)).  The Hagys argue that, in
this case, "there were three CSPA violations," resulting in a
total award of $600.00 per plaintiff.  Id.  On this basis, the
Hagys move this Court to award them $1,200.00 in statutory
damages based upon the OCSPA violations.

The Law Firm Defendants oppose the amount of statutory
damages that the Hagys seek under the OCSPA.  (Doc. #102 at 1-2).
In particular, the Law Firm Defendants assert that, although the
OCSPA authorizes statutory damages of $200.00 per violation, the
Court should award less than that amount.  Id. at 2.  The Law
Firm Defendants agree that the Court has held them liable for
three violations of the OCSPA.  Id. at 3.  The Law Firm
Defendants argue that an award less than the statutory maximum
for each violation should be ordered, however, because the
violation arising from the June 30 letter was an oversight, and
the violation arising from the June 8 letter "contained no false
or misleading information."  Id.  Finally, the Law Firm
Defendants argue:

> Compliance with FDCPA §1692g (which formed the basis for
> an OCSPA claim) would have been difficult for Law Firm
> Defendants in this case because FDCPA §1692g requires the
> debt collector to send written notice to the consumer
> asserting that a specified amount is being sought for
> collection.    After  Law  Firm  Defendants'  initial
> communication  with  Plaintiffs  on  June  8th, the  parties
> agreed  that  no  specified  amount  would  be  owed  if
> Plaintiffs executed the deed-in-lieu of foreclosure.

Id. at 3.  On this basis, the Law Firm Defendants request
statutory damages to be an amount less than the maximum.  Id.

For the reasons set forth above, the Court finds that the
Hagys are entitled to less than the maximum amount of statutory
damages for the OCSPA violation based on the June 30 letter.
Here, the Court finds that $100.00 per plaintiff based on this

OCSPA violation is appropriate.  As to the OCSPA violations
stemming from the Law Firm Defendants' use of the June 8 letter,
the Court finds that a higher amount is warranted.  The Court
reaches this conclusion because, unlike the June 30 letter, the
June 8 letter was sent directly to the Hagys and the subsequent
failure to warn also should have been directed to them.  For
these OCSPA violations, the Court finds that the Hagys are
entitled to $150.00 per plaintiff per violation.  Based upon
these findings, the Hagys will be awarded $400.00 each for the
three OCSPA violations, for a total amount of $800.00 in
statutory damages under the OCSPA in this matter.

### C. Attorney Fees And Costs

Finally, the Hagys argue that they are entitled to attorney
fees and costs because they were successful in this action under
the FDCPA and the OCSPA.  There appears to be no dispute that the
Hagys are entitled to attorney fees and costs in this case.  See
15 U.S.C. §1692k(a)(3) (stating that a plaintiff who brings a
successful FDCPA action is entitled to costs "together with a
reasonable attorney's fee as determined by the court").
Consequently, the sole issue remaining for consideration is the
appropriate amount of such fees and costs in these circumstances.

In determining what constitutes a reasonable award of
attorney fees, the Court first determines the lodestar amount,
which is "calculated by multiplying the number of hours
reasonably expended on the litigation by a reasonable hourly
rate." Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 551-
52 (6th Cir. 2008) (citing Hensley v. Eckerhart, 461 U.S. 424,
433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).  "Where the party
seeking the attorneys fees has established that the number of
hours and the rate claimed are reasonable, the lodestar is
presumed to be the reasonable fee to which counsel is entitled."
Imwalle, 515 F.3d at 552 (citing Pennsylvania v. Delaware Valley

Citizens' Council for Clean Air, 478 U.S. 546, 564-65, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)). "Where documentation of hours is inadequate, the district court may reduce the award accordingly." Hensely, 461 U.S. at 433.

In any context where an attorney requests fees to be awarded by the Court, there is an obligation to award only reasonable fees. While the Court has substantial discretion in determining what is a reasonable fee, there are a number of factors which should be considered, including the prevailing market rates for comparable legal work in the community, whether the amount of time for which compensation is requested is reasonably necessary to perform the tasks described, and whether the representation was of at least average quality. See Kauffman v. Sedalia Med. Ctr., Inc., No. 2:04-CV-543, 2007 WL 490896 at *3 (S.D. Ohio Feb. 9, 2007)(citing Bemis v. Hogue, Nos. 89-1697, 89-1767, 1991 WL 102385, at *7 (6th Cir. Jun 13, 1991)).

In their declarations in support of the Hagys' fee application, counsel aver that the lodestar amount is the following:

> For Attorney Finzel Lewis:
> 133.55 hours x $175.00 per hour billable rate = $23,371.25;
>
> For Attorney Icove:
> 138.30 hours x $400.00 per hour billable rate = $55,320.00; and
>
> For Attorney Williams:
> 9.2 hours x $400.00 per hour billable rate = $3,680.00.

The charges amount to a total of $81,371.25 in attorney fees as of April 3, 2013, the date on which the Hagys filed the motion. (Doc. #101 at 20). The Hagys acknowledge that the lodestar amount is significant, but they contend that "it is nonetheless reasonable and proper . . . in light of Attorney Icove's and Attorney Williams' vast array of experience in consumer cases; the fact that Attorney Finzel Lewis exercised 'billing judgment'

and reduced the amount of hours billed by over 35%; and perhaps most importantly, the militant defense waged by Law Firm Defendants and the resulting time and effort required of Plaintiffs' counsel to respond." (Doc. #103 at 5) (citation omitted).

The Law Firm Defendants argue that the amount of attorney fees should be reduced for several reasons. First, the Law Firm Defendants claim that the attorney fees should be reduced because the Hagys did not prevail on the majority of their causes of action. Next, the Law Firm Defendants argue that the lodestar amount is significantly less than the Hagys' request because counsel engaged in duplicative billing, the hourly rates for Attorney Icove and Attorney Williams are unreasonable, and the attorney fees requested bear no relationship to the Hagys' recovery. Finally, the Law Firm Defendants contend that a large attorney fee award "incentivizes gamesmanship in the litigation process" and does not comport with the FDCPA's purpose. (Doc. #102 at 8-9).

As set forth below, the Court will reduce the amount of attorney fees requested for duplicative billing and tasks not sufficiently tied to the claims against the Law Firm Defendants. After doing so, the Court will address the Law Firm Defendants' arguments relating to the Hagys' unsuccessful claims, the reasonableness of the hourly rates, the proportionality of the recovery to attorney fees, and whether a large attorney fee award "incentivizes gamesmanship in the litigation process" and comports with the FDCPA's purpose. Last, the Court will address the Hagys' supplemental request for attorney fees.

1. Reductions In The Lodestar Amount

In order to reach a reasonable award of attorney fees, the Court first addresses duplication in the billing records. Next, the Court examines time entries which describe tasks that are not sufficiently tied to the claims against the Law Firm Defendants.

13

As set forth below, this analysis will result in a reduction of the lodestar amount in the amount of $13,155.63.

a. Duplicative Billing

The Law Firm Defendants argue that the Court should reduce the amount of attorney fees requested based upon alleged duplicative billing. Attorneys conferring with one another is not necessarily indicative of duplicated efforts or "double billing" to a client. See Glover v. Johnson, 138 F.3d 229, 252 (6th Cir. 1998). If, however, upon review of the disputed hours, the Court determines that a duplication of services indeed has occurred, it may in its discretion reduce the hours at issue to eliminate the duplication. See id.

The Law Firm Defendants attach Exhibit C to their memorandum in opposition, which they claim sets forth the duplicative billing by Attorney Icove, Attorney Finzel Lewis, and Attorney Williams on a given task. (Doc. #102). The Law Firm Defendants state, "[o]f particular note is that deposition attendance, teleconferences and the vast majority of motion practice was billed by both Ms. Lewis and Mr. Icove." Id. at 5.

In response, the Hagys argue that many of the entries characterized as duplicative were "actually entries for each counsel's individual completion of their assigned tasks related to a common pleading, memorandum, project, or research." (Doc. #103 at 9). The Hagys assert that:

> Attorney Icove and Attorney Finzel Lewis regularly
> assigned and completed separate tasks, taking care not to
> duplicate efforts. Additionally, it is reasonable that
> co-counsel would each attend significant matters such as
> conference calls with the Court and depositions of the
> parties and each would spend time reviewing Law Firm
> Defendants' pleadings and correspondence. Because
> matters significant to the outcome of the case can
> transpire during any engagement with the Court, and
> certainly during the depositions of the parties, it is
> reasonable that both Attorney Icove and Attorney Finzel
> Lewis participated in these matters. Further, it is
> imperative that each co-counsel review all of the

14

pleadings and correspondence in order to ensure competent representation.

Id. On this basis, the Hagys argue that the time expended was necessary in furtherance of their case and should not be reduced by the Court.  Id.

The Hagys have explained how Attorney Finzel Lewis and Attorney Icove came to work together on this matter, noting that Attorney Finzel Lewis, an attorney for Southeastern Ohio Legal Services ("SEOLS"), had limited experience in federal consumer litigation, an area in which Attorney Icove had considerable experience.  According to the Hagys, when Attorney Finzel Lewis attempted to place this fee-generating case with Attorney Icove consistent with the applicable federal regulations, Attorney Icove agreed to represent the Hagys on the condition that SEOLS agreed to serve as co-counsel on the case.  (Doc. #103 at 6).  As the Hagys argue, had Attorney Finzel Lewis not served as co-counsel on this case billing at an hourly rate significantly lower than Attorney Icove and reducing the number of hours she billed by over 35%, the request for attorney fees would have been higher. Id. at 5, 7.

The Court has carefully examined the bills for Attorney Finzel Lewis and Attorney Icove, including but not limited to the time entries set forth in the Law Firm Defendants' Exhibit C, and does not find the work performed to be overly duplicative. Further, that both Attorney Finzel Lewis and Attorney Icove attended depositions and teleconferences and collaborated with respect to motions practice is not unusual.  See, e.g., Communities for Equity v. Michigan High School Athletic Assoc., No. 1:98-CV-479, 2008 WL 906031, at *16 (W.D. Mich. Mar. 31, 2008) (discussing the reasons for having multiple attorneys present for a deposition).

Turning to the time billed by Attorney Williams, the itemized time entries reflect that he worked on matters

15

associated with summary judgment, on the motion for attorney
fees, on matters related to mediation, in addition to briefly
becoming acquainted with the case.  The following summarizes
Attorney Williams's bill:

> <u>Time relating to summary judgment</u>
> 9/29/12   1.2 hours = 480.00
> 9/30/12   1.5 hours = 600.00
> 10/2/12    .80 hours = 320.00
> 11/16/12   .50 hours = 200.00
> 12/2/12    .40 hours = 160.00
> (4.4 hours = $1,760.00)
>
> <u>Time on the motion for attorney fees</u>
> 3/25/13  .80 hours = 320.00
> 3/25/13  .40 hours = 160.00
> 3/29/13 1.3 hours = 520.00
> 4/2/13    .60 hours = 240.00
> (3.1 hours = $1,240.00)
>
> <u>Time on matters relating to mediation</u>
> 2/23/13 .60 hours = 240.00
> 3/5/13  .50 hours = 200.00
> (1.1 hours = $440.00)
>
> <u>Time getting acquainted with case</u>
> 9/29/12 Reviewing Order re: Defendants' Motion to
> Dismiss .60 hours = 240.00
> (.60 hours = $240.00)

(Doc. # 101, Ex.3).  Based on the foregoing, Attorney Williams
worked for a total of 9.2 hours and billed $3,680.00 for his work
on this matter.

     The Law Firm Defendants allege that 3.5 hours of Attorney
Williams's time were duplicative.  (Doc. #102, Ex. C at 2).  More
specifically, the Law Firm Defendants urge that the following
tasks were duplicative:

| Date | Task | Time |
|------|------|------|
| 9/29/2012 | reviewing/editing draft motion for summary judgment | 1.2 hours |
| 9/30/2012 | editing/revising draft motion for summary judgment | 1.5 hours |
| 10/2/2012 | revising defendants summary judgment motion | .8 hours |

(Doc. #102, Ex. C at 2).  Consequently, the Law Firm Defendants urge that these tasks should not be included the attorney fees awarded in this case.

The Court agrees that Attorney Williams's tasks, as set forth by the Law Firm Defendants, appear to be duplicative of the efforts expended by Attorney Finzel Lewis and Attorney Icove. Even beyond the three time entries highlighted by the Law Firm Defendants, there has been no explanation offered as to why Attorney Williams was added to this case on September 29, 2012, over a year after this case was filed by competent counsel on June 15, 2011.  Although Attorney Williams has outlined his considerable experience in consumer law, as noted above, Attorney Icove also has considerable experience in that area.  The motion for attorney fees does not argue that Attorney Williams's work was an individual completion of assigned tasks related to a common project, nor does it offer any other argument as to why he completed work also completed by Attorney Finzel Lewis and Attorney Icove.  Absent such an explanation, the Court will find that Attorney Williams's work was duplicative and that the 9.2 hours and corresponding bill for $3,680.00 is unreasonable. Accordingly, the $3,680.00 requested for Attorney Williams's work will not be included in the award of attorney fees in this case.

     b. <u>Charges Not Sufficiently Tied To Claims Against</u>
<u>The Law Firm Defendants</u>

In addition to reducing the award for duplicative billing,

the Court also will reduce the award for work performed that is not sufficiently tied to the claims against the Law Firm Defendants.  Although not raised by the Law Firm Defendants, the Court finds that a review of the bills reflects time entries for work relating primarily to claims against the Green Tree Defendants, including matters relating to the arbitration with those Defendants.  Because the arbitration did not involve the Law Firm Defendants and the Hagys raised claims against those Defendants alone, the Court finds it unreasonable to charge the Law Firm Defendants for attorney fees related to those tasks.  In making this ruling, the Court recognizes that the allegations against the Law Firm Defendants stem from the same facts as the allegations against the Green Tree Defendants.  However, the Hagys bear the burden of demonstrating that the requested fees are reasonable.  See Disabled Patriots of Am., Inc. v. Reserve Hotel, Ltd., 659 F. Supp.2d 877, 884 (N.D. Ohio 2009).  Here, the Hagys have failed to meet that burden, providing descriptions which suggest that the tasks at issue related exclusively or at least primarily to the Green Tree Defendants.  Consequently, the Court will reduce the lodestar amount for attorney fees relating to those tasks, each of which is set forth below.

On August 4, 2011, the Green Tree Defendants filed a motion to stay proceedings and compel arbitration.  The following charges, amounting to a total of $3,452.50, appear to be arising from that motion.  Because those charges are not sufficiently tied to claims against the Law Firm Defendants, the Law Firm Defendants will not bear the cost for the following tasks:

| Date | Task | Time | Fee |
|---|---|---|---|
| 8/11/2011 | Emails with Kristen; research on arb issue. (EAI) | 2.10 hours | 840.00 |
| 8/15/2011 | Research on arb issue. (EAI) | 1.50 hours | 600.00 |

| Date | Task | Time | Fee |
|------|------|------|-----|
| 8/15/2011 | draft email to attys Bland & Baily at Justice Netwk re arbitration (KFL) | .50 hours | 87.50 |
| 8/15/2011 | research arbitration issues; email NCLC to Ed (KFL) | .50 hours | 87.50 |
| 8/17/2011 | Review and revised memo. (EAI) | 2.30 hours | 920.00 |
| 8/18/2011 | Reviewed and revised memo and telephone call to Kristen. (EAI) | .50 hours | 200.00 |
| 8/18/2011 | draft email to Bland re arbitration (KFL) | .20 hours | 35.00 |
| 8/18/2011 | conference call with Ed (KFL) | .50 hours | 87.50 |
| 8/18/2011 | review arbitration motion; emails from Ed (KFL) | .50 hours | 87.50 |
| 8/23/2011 | review emails re arbitration (KFL) | .20 hours | 35.00 |
| 8/26/2011 | research Conseco Bus. entity, bkruptcy, relationshp w/ Green Tree (KFL) | 2.50 hours | 437.50 |
| 9/6/2011 | email Pat Skilliter re arbitration issues (KFL) | .20 hours | 35.00 |

The following charges also relate to the motion to stay and compel arbitration filed by the Green Tree Defendants, as well as a motion to dismiss filed by the Law Firm Defendants. The Court notes that, on August 25, 2011, the Hagys filed both an opposition to the motion to stay and compel arbitration and an opposition to the motion to dismiss. Because counsel did not delineate the exact amount of time attributable to each task, the Court finds it appropriate to reduce the amount of fees for the following tasks by half, amounting to a total reduction of $2,960.00 in attorney fees relating to the following charges:

| Date | Task | Time | Fee |
|------|------|------|-----|
| 8/22/2011 | Research; review and revised memo in opposition to motion to stay and motion to dismiss. (EAI) | 5.20 hours | 2,080.00 |
| 8/24/2011 | Research and revised both memo's; telephone call with Kristen. (EAI) | 5.70 hours | 2,280.00 |
| 8/25/2011 | Proofed and cite checked memo's and filed. (EAI) | 3.10 hours | 1,240.00 |
| 8/25/2011 | Reviewed ECF filing. (EAI) | .10 hours | 40.00 |
| 9/6/2011 | rev cases; emails to/from Ed; re prelim statemt; supp auth both mot(KFL) | 1.0 hours | 175.00 |
| 9/19/2011 | email/call from Ed/Michelle re conf call; rev addl auth on arb issue (KFL) | .30 hours | 52.50 |
| 10/6/2011 | review email, case re arbitration; email to Icove (KFL) | .30 hours | 52.50 |

Further, on November 10, 2011, the Green Tree Defendants filed a motion to amend/correct motion to stay proceedings and compel arbitration. On November 15, 2011, the Court granted the motion for leave to amend and allowed plaintiffs 14 days from the date of the order to respond to the amended motion to stay. The Hagys filed an opposition to the motion on November 29, 2011, and the Green Tree Defendants filed a reply on December 6, 2011. The charges below, amounting to $2,910.00, appear to be related to those filings, as well as the subsequent arbitration. As such, the following will not be charged against the Law Firm Defendants:

| Date | Task | Time | Fee |
|------|------|------|-----|
| 11/10/2011 | Reviewed ECF filing and notice. (EAI) | .10 hours | 40.00 |

| Date | Task | Time | Fee |
|---|---|---|---|
| 11/10/2011 | Reviewed & received ECF filing. (EAI) | .10 hours | 40.00 |
| 11/10/2011 | Email to Kristen. (EAI) | .10 hours | 40.00 |
| 11/10/2011 | review motion to amend; call from Icove to discuss response (KFL) | .50 hours | 87.50 |
| 11/12/2011 | Reviewed motion and redrafted portion of the memorandum. (EAI) | .90 hours | 360.00 |
| 11/14/2011 | research for reply to motion to amend (KFL) | 1.75 hours | 306.25 |
| 11/14/2011 | Email to Kristen. (EAI) | .10 hours | 40.00 |
| 11/15/2011 | Reviewed ECF order; docketed dates conference call with Kristen; revised memo and email to Kristen. (EAI) | 1.20 hours | 480.00 |
| 11/15/2011 | rev order; meet w Ed re case status; reply to amended mot to arbitrate (KFL) | .50 hours | 87.50 |
| 11/29/2011 | Reviewed memo and revised; emails to Kristen; research; and filed. (EAI) | 2.10 hours | 840.00 |
| 12/6/2011 | Reviewed reply and file. (EAI) | .30 hours | 120.00 |
| 2/3/2012 | review arbitration decision/research (KFL) | 1.25 hours | 218.75 |
| 3/13/2012 | email from opposing atty re arbitration; forward to Icove (KFL) | .10 hours | 17.50 |
| 3/19/2012 | email from Bennett re Green Tree arbitration; call Ed to discuss (KFL) | .30 hours | 52.50 |
| 3/19/2012 | Email to Kristen; telephone call with Kristen. (EAI) | .20 hours | 80.00 |
| 3/20/2013 [sic] | draft reply to Bennett re arbitration (KFL) | .20 hours | 25.00 |

| Date | Task | Time | Fee |
|------|------|------|-----|
| 4/2/2012 | email from opposing atty re arbitrator (KFL) | .10 hours | 17.50 |
| 4/12/2012 | call from Icove re arbitrator selection (KFL) | .10 hours | 17.50 |
| 4/12/2012 | Telephone with Kristen. (EAI) | .10 hours | 40.00 |

Finally, the following tasks appear to be related in part to claims against the Green Tree Defendants, with some time allocated to claims against the Law Firm Defendants. Consistent with the findings set forth above, because the Hagys' counsel did not delineate the exact amount of time attributable to each task, the Court finds it appropriate to reduce the amount of fees for the following tasks by half. Doing so results in a reduction of $153.13 in attorney fees for the following charges:

| Date | Task | Time | Fee |
|------|------|------|-----|
| 11/30/2011 | rev Green Tree's response on arbitration; rev Demer's discov response (KFL) | .50 hours | 87.50 |
| 2/6/2012 | emails to/from Ed; rev mot; research arb issues; appeal issue (KFL) | 1.25 hours | 218.75 |

### c. Summary Of Reductions

Taking all of the reductions above together, the Court will reduce the lodestar amount by the $3,680.00 billed by Attorney Williams and the $9,475.63 billed for tasks not sufficiently tied to the claims against the Law Firm Defendants, resulting a total reduction in the lodestar amount of $13,155.63.

### 2. The Law Firm Defendants' Remaining Arguments

Next, the Court will address the Law Firm Defendants' arguments concerning charges for the unsuccessful claims, the reasonableness of the hourly rates, the proportionality of the

recovery to attorney fees, and whether a large attorney fee award "incentivizes gamesmanship in the litigation process" and comports with the FDCPA's purpose.

    a. <u>Impact Of Dismissed Claims On Fee Award</u>

The Law Firm Defendants argue that the fees sought should be reduced because the Hagys were unsuccessful on the majority of their claims. (Doc. #102 at 3-4). The Hagys disagree, stating that they are entitled to "100% of attorney's fees, so long as the unsuccessful claims are premised upon a common core of facts." (Doc. #103 at 10 (citing <u>Pheland v. Bell</u>, 8 F.3d 369, 374-75 (6th Cir. 1993)).

If claims arise "from a common nucleus of facts" such that it would be impossible to distinguish "the time counsel spent on each one," a court need not divide the billable hours on a claim-by-claim basis. <u>Dowling v. Litton Loan Servicing LP</u>, 320 Fed. Appx. 442, 448 (6th Cir. 2009). Accordingly, the Court does not need to reduce the attorney fees requested to account for unsuccessful claims if the "successful and unsuccessful claims were related both factually and legally. . . ." <u>Id.</u>

Here, the Hagys are not seeking attorney fees on distinctly separate and unrelated claims, some of which were unsuccessful. Rather, the claims against the Law Firm Defendants involved a core of common facts, making the Hagys a prevailing party entitled to attorney fees under the relevant statute. <u>See Allen v. Allied Plant Maintenance Co. of Tennessee, Inc.</u>, 881 F.2d 291, 299 (6th Cir. 1989). More specifically, each of the claims against the Law Firm Defendants was based upon their communications with the Hagys concerning a warranty deed in lieu of foreclosure after filing a foreclosure action against the Hagys on behalf of Green Tree. Accordingly, the Court finds the Law Firm Defendants' argument to be without merit, and it will not reduce the award of attorney fees on this basis.

b. <u>Reasonableness Of Hourly Rates</u>

The Court now turns to the Law Firm Defendants' argument regarding the reasonableness of Attorney Icove's hourly rate. Plainly stated, the Law Firm Defendants argue that the $400.00 per hour charged by Attorney Icove is excessive, and that Attorney Finzel Lewis could have handled this matter on her own. As set forth above, the Court has examined how Attorney Finzel Lewis and Attorney Icove came to work together and finds their joint representation in this case to be reasonable. Therefore, the Court need only address the Law Firm Defendants' argument that Attorney Icove's rate is excessive.

To determine whether a billing rate is reasonable, courts should assess the prevailing market rate in the relevant community, which is the rate that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record...." <u>Adcock-Ladd v. Secretary of Treasury</u>, 227 F.3d 343, 350 (6th Cir. 2000) (citations omitted). "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." <u>Van Horn v. Nationwide Prop. and Cas. Ins. Co.</u>, 436 Fed. Appx, 496, 498-99 (6th Cir. Aug. 26, 2011).

Neither side has submitted evidence regarding what reasonable attorneys of similar skill and experience would charge for legal services in a comparable market. An attorney's customary client billing rate, however, can be a reliable indicator of the market rate. <u>See</u> <u>West v. AK Steel Corp. Ret. Accumulation Pension Plan</u>, 657 F. Supp. 2d 914, 932 (S.D. Ohio 2009) (citing <u>Hadix v. Johnson</u>, 65 F.3d 532, 526 (6th Cir. 1995)). Here, Attorney Icove avers that his hourly rate has increased incrementally over the years in practice, which included his being awarded a fee of $300.00 in 2008. (Doc. #101, Ex. 2 at ¶9. The Court has no reason to doubt that the rate of

$400.00 represents Attorney Icove's current billing rate or that an attorney of his skill and experience in a comparable market could reasonably charge that amount on a hourly basis.

In Wells v. Rhodes, No. 2:11-CV-217, 2012 WL 3835391, at *2 (S.D. Ohio 2012), Judge Sargus approved an hourly rate of $400.00 for an attorney who possessed considerable experience, when that attorney worked in combination with an attorney with a much lower hourly rate. Applying the decision in Wells to this case, the Court finds that $400.00 is reasonable based on Attorney Icove skill and experience when combined with Attorney Finzel Lewis's lower hourly rate. Further, because the work performed in this case required an attorney with skill and experience in consumer law, the Court finds Attorney Icove's hourly rate to be reasonable.

c. Proportionality Of Fees To Recovery And The Impact
Of A Large Attorney Fee Award

Finally, the Law Firm Defendants argue that the attorney fees requested bear no relationship to the Hagys' recovery, and that a large attorney fee award "incentivizes gamesmanship in the litigation process" and does not comport with the FDCPA's purpose. (Doc. #102 at 8-9). The Court addresses these arguments in turn.

The Court first addresses the Law Firm Defendants' argument concerning the proportionality of the recovery to the requested attorney fees. This is not an instance where the relief sought is far more than the relief obtained. That is, the statutory damages awarded in this case were limited at the outset and the resulting relief is reflective of that limitation. As to a reasonable award of attorney fees in relation to that relief, at least one court has observed that "FDCPA suits usually entail significant awards of attorneys' fees, above and beyond any damages awarded." Sanders v. Jackson, 209 F.3d 998, 1004 (7th Cir. 2000). Thus, that the amount of attorney fees will be

25

considerably higher than the damages award in this case is not unusual. Here, the award of attorney fees does not need to be proportional to recovery, and the Court will not reduce the lodestar amount, which is presumed to be reasonable, on this basis. See id.; see also Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995)(finding that the award of attorney fees does not need to be proportional to the recovery in the civil rights context).

Next, the Court addresses the Law Firm Defendants' arguments that a large attorney fee award would encourage gamesmanship in the litigation process, and that it does not comport with the FDCPA's purpose. The Law Firm Defendants assert that "the facts of this case present a particularly dangerous opportunity for gamesmanship" because the communications at issue were "solicited by Plaintiffs or their counsel." (Doc. #102 at 8). The Sixth Circuit has noted that the FDCPA's attorney fees provisions serve as a deterrent to prevent the prohibited conduct. See Sanders, 209 F.3d at 1004 ("The Sixth Circuit is correct in noting that, on top of the damages awarded, the costs and attorneys' fees provisions in the FDCPA provide substantial punishment which undoubtedly deters similar conduct") (citing Wright, 22 F.3d at 651). As noted above, the proportionality of the attorney fees to the recovery is not unusual in this type of lawsuit. To the extent that the attorney fees requested may be somewhat higher than in a typical case, this difference is attributable the fact that this case has been highly contested by the Law Firm Defendants since its inception. Although the Law Firm Defendants are entitled to a zealous defense, the applicable mandatory attorney fees provisions dictate that such a defense will come at a considerable cost if the outcome is unfavorable. Because the award of attorney fees does not promote gamesmanship in the litigation process or run counter to the FDCPA's purpose, the

26

Court finds the Law Firm Defendants' arguments to be without merit.

### 3. Supplemental Request For Attorney Fees

On September 26, 2013, with leave of Court, the Hagys filed a supplemental motion for an award of attorney fees. In the supplemental motion, the Hagys seek an additional award of attorney fees for the billing charges incurred since the filing of the original motion for an award of statutory damages, attorney fees, and costs. Specifically, the Hagys seek the following: $3,600.00 in attorney fees for work performed by Attorney Icove, $1,720.00 in attorney fees for work performed by Attorney Williams, and $2,450.00 in attorney fees for work performed by Attorney Finzel Lewis, for a total of $7,700.00 in additional attorney fees.

The Court has reviewed the attorney fees requested for worked performed by Attorney Icove and Attorney Finzel Lewis and finds them to be reasonable. With respect to the attorney fees requested for Attorney Williams, however, the Court finds the charges to be duplicative. As set forth above, there has been no explanation offered as to why Attorney Icove required the assistance of Attorney Williams on the additional tasks described in the supplemental motion. Further, the descriptions do not reflect that Attorney Williams's work was an individual completion of assigned tasks related to a common project. Consequently, the Cou rt will adjust the lodestar amount to add $5,980.00 for the additional work performed by Attorney Icove and Attorney Finzel Lewis.

### 4. Summary of Attorney Fees

Based on the foregoing, the Court will find that attorney fees in the amount of $74,195.62 is reasonable, with $68,215.62 stemming from the original motion and $5,980.00 stemming from the supplemental motion.

5. Costs and Expenses

Finally, the Hagys request costs and expenses in the amount of $312.05 for deposition transcripts. Because the Court finds this request to be reasonable, it will award the full $312.05 requested in the motion.

### III. Conclusion

For the reasons set forth above, the motion for an award of statutory damages, attorney fees, and costs filed by the Hagys is granted (Doc. #101), and the Court awards the following: $500.00 per plaintiff for statutory damages under the FDCPA, for a total of $1,000.00 in damages under the FDCPA; $400.00 per plaintiff for the three OCSPA violations, for a total of $800.00 in damages under the OCSPA; attorney fees in the amount of $74,195.62; and costs and expenses in the amount of $312.05.  The Clerk is directed to enter judgment in favor of the Plaintiffs and against the Law Firm Defendants in the total amount of $76,307.67.  The proceedings in this case against the Green Tree Defendants have been stayed pending arbitration.  The parties shall provide the Court with an update regarding the status of that arbitration within seven days of the issuance of this Opinion and Order.


/s/ Terence P. Kemp
UNITED STATES MAGISTRATE JUDGE