```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

James R. Hagy, III, et al.,      :

     Plaintiffs,              :

  v.                              :       Case No. 2:11-cv-530

                                   :

Demers & Adams, LLC, et al.,     :       Magistrate Judge Kemp

     Defendants.              :

## OPINION AND ORDER

### I.  Introduction

Plaintiffs James R. Hagy III and his wife, Patricia R. Hagy, (who has since died) filed this case against defendants David J. Demers and the Law Firm of Demers and Adams ("the Law Firm Defendants") and against Defendant Green Tree Servicing LLC alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692, *et seq*., the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. §§1345.01 *et seq*., and Ohio common law.  The facts are not complicated; as the Court noted in Hagy v. Demers & Adams, LLC, 2014 WL 791357, *1 (S.D. Ohio Feb. 26, 2014),

> this case arises from a foreclosure action initiated by the Law Firm Defendants on behalf of Green Tree against the Hagys. After the foreclosure action was filed, the Hagys signed a warranty deed in lieu of foreclosure in return for which it was agreed that there would be no attempt to collect any deficiency balance. Thereafter, the foreclosure complaint was dismissed, but Green Tree began contacting the Hagys by telephone for the collection of an alleged deficiency.

Obviously, that was improper, and Green Tree and the Hagys, who had agreed to arbitrate their dispute, have now resolved their differences.  See Doc. 139 (Stipulation of Settlement of Arbitration Claims Only).

The Law Firm Defendants got involved as a result of their representation of Green Tree.  They participated in the negotiations which led to the agreement that if the Hagys signed a deed in lieu, there would be no further collection efforts.  Mr. Demers wrote a letter to that effect on June 30, 2010.  This Court held that the June 30 letter violated both the FDCPA and the OCSPA because it was a letter from a debt collector which did not, as required by law, make that disclosure.  The Court also held that the Law Firm Defendants' failure to make that same disclosure in a June 8, 2010 letter violated the OCSPA (it fell outside the limitations period for the Hagys' FDCPA claim), as did their failure to provide the Hagys with a "civil Miranda warning" within five days thereafter. See Hagy v. Demers & Adams, LLC, 2013 WL 434053 (S.D. Ohio Feb. 5, 2013).  As a result of that and subsequent orders, the Court has awarded the Hagys statutory damages and attorneys' fees.  See Hagy v. Demers & Adams, LLC, 2013 WL 5728345 (S.D. Ohio Oct. 22, 2013).

There have been additional proceedings since that time, primarily directed at collection efforts, but on May 16, 2016, the Supreme Court issued its ruling in Spokeo, Inc. v. Robins, 136 S.Ct. 1540 (2016), clarifying some aspects of the question of when a plaintiff asserting a statutory cause of action has Article III standing.  The Law Firm Defendants, through a motion for reconsideration, have argued that under Spokeo, the Hagys lack standing to pursue their claims.  The motion is fully briefed.  For the following reasons, the Court will deny that motion, as well as two other pending motions.

## II. Reconsideration of Summary Judgment

The Court begins by addressing, briefly, its ability to reconsider an earlier grant of summary judgment.  Under Rule 54(b) of the Federal Rules of Civil Procedure, a district court may revise its own interlocutory orders "at any time before the

entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). This authority vests in district courts "significant discretion....to afford such relief from [interlocutory orders] as justice requires." Rodriquez v. Tenn. Laborers Health & Welfare Fund, 89 Fed.Appx. 949, 959 (6th Cir. 2004) (citing Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)). Traditional justifications for reconsideration include "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Louisville/Jefferson Co. Metro Govt. v. Hotels.com L.P., 590 F.3d 381, 389 (6th Cir. 2009). Justice does not require that the district court grant reconsideration on an issue that would not alter its prior decision. Rodriquez, supra, 89 Fed.Appx. At 959-960. Because the Spokeo decision constitutes, at least arguably, a change of controlling law, the Court will address the merits of the motion for reconsideration.

### III. Discussion

#### A. Article III Standing

Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement. U.S. Const. art. III, §2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). A federal court must not go "beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers." Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94 (1998). If the plaintiff lacks standing, the federal court lacks jurisdiction. Thus, standing is "the threshold question in every federal case." Warth v. Seldin, 422 U.S. 490, 498 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of

particular issues." Id. Standing under Article III has three elements. "First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations and quotation marks omitted).  Second, the injury must be "fairly traceable to the challenged action of the defendant." Id. (Internal alterations omitted).  Third, it must be likely that the injury will be "redressed by a favorable decision." Id. at 561. The burden is on the party invoking federal jurisdiction to demonstrate Article III standing.  Stalley v. Methodist Healthcare, 517 F.3d 911, 916 (6th Cir. 2008). Last, each element of standing must be supported with the "manner and degree of evidence required at the successive stages of litigation." Lujan, 504 U.S. at 561.  The Court and the parties agree that the plaintiffs have established the second and third elements of Article III standing.  Thus, the sole issue here is whether the Hagys can satisfy the injury-in-fact requirement.

B.   Spokeo v. Robins

Because this is the first occasion that the undersigned has had to apply Spokeo v. Robins to a case involving a statute-based cause of action, the Court will take some time to set forth its understanding of that decision.

Spokeo was filed under the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq*. According to the Supreme Court's opinion, Spokeo operates a "people search engine" and may report, online, information about people whose names it searches.  It allegedly reported some inaccurate information about Thomas Robins, and he sued, claiming a violation of his statutory rights under the FCRA, particularly the section which obligates consumer reporting agencies to try to make sure their reports are accurate.  The Act provides for statutory damages if its provisions are violated. The issue presented to the Supreme Court was whether Mr. Robins

-4-

had adequately pleaded an "injury-in-fact" that satisfied Article III.

The Supreme Court's discussion in Spokeo focused on two questions: was the injury which Mr. Robins allegedly suffered sufficiently "particularized" and was it sufficiently "concrete"? It pointed out that a particularized injury is one which has both been suffered by the plaintiff and is not an injury common to an entire class of persons affected by the statute in question - that is, it is not "undifferentiated." It then discussed concreteness, stating that an injury, to be concrete, must be "'real' and not 'abstract.'" Spokeo, 136 S.Ct. at 1548. Such an injury can be either tangible or intangible, but it must flow from the infliction of actual harm; that is, a plaintiff cannot merely allege a "bare procedural violation" of a statute - even one which purports to provide a remedy for such violations - and still satisfy Article III. Id. at 1550. The majority opinion did not believe that the Ninth Circuit Court of Appeals had applied these principles properly, and remanded for a new determination of whether Mr. Robins had standing. Two Justices dissented as to that disposition, concluding that the record was sufficient to show that real harm could come to Mr. Robins as a result of the type of misinformation (concerning his age, marital status, employment, and family composition) Spokeo had posted on its website. Id. at 1554-56.

   C. The Adequacy of the Hagys' Claimed Injury

It is important for the Court to begin its analysis by looking at what the Hagys alleged in the complaint. They did, of course, allege that the June 8, 2010 and June 30, 2010 letters and associated omissions violated statutory provisions. Beyond that, they claimed that "[a]s a result [of] Defendants' actions and inactions, Plaintiffs suffered headaches, nausea, embarrassment, anxiety, fear, mental anguish/emotional distress, loss of sleep, humiliation, outrage and anger." (Amended

Complaint, Doc. 18 at ¶21).  It is also important to note that the disclosures at issue here - notice that someone is acting as a debt collector and the provision of "civil Miranda warnings" - are designed to insure that unsophisticated consumers are not misled about their rights, and that the Hagys pleaded that they were not provided with these required disclosures.

The Court has no difficulty concluding that the Hagys' injury is "particularized."  Their claims are based on actions taken directly against them, or matters communicated directly to them, as opposed to being predicated on some generalized grievance about the Law Firm Defendants' conduct under the statutes in question.  The only issue, then, is whether the injuries they claim are "real" or "abstract."

There are a fair number of federal court decisions which consider (or at least touch on) how Spokeo applies in the context of the FDCPA, including seven from federal courts within the Sixth Circuit.  The only decision from this Court which appears on WestLaw, Kline v. Mortgage Electronic Registration System, 2016 WL 3926481 (S.D. Ohio July 18, 2016), simply drops a footnote to the effect that a prior Court of Appeals decision, Federal Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir. 2007), may no longer be good law to the extent that it holds that a plaintiff "can recover statutory damages against [a defendant] for [an] alleged FDCPA violation, even in the absence of any damages."  Id. at *7 n.5.  If the word "harm" is substituted for "damages," that may be an accurate statement of the law, but it does not really assist the Court in deciding the particular issue raised in this case.

More directly on point is the case of Macy v. GC Services Limited Partnership, 2016 WL 5661525 (E.D. Ky. Sept. 29, 2016).  That case, like this one, involved a violation of the "civil Miranda warning" provision of the Act.  The defendant argued that its failure to provide this warning in writing was the type of

-6-

mere procedural violation that did not give rise to an Article III "injury-in-fact." The court rejected that argument, holding that the possibility that the failure to provide such warnings might lead a "least sophisticated debtor" to waive certain statutory rights was an adequate injury for standing purposes. Id. at *4. Another on-point decision, Anda v. Roosen Varchetti & Olivier, PLLC, 2016 WL 7157414 (W.D. Mich. Oct. 31, 2016), held that the type of informational injury which the FDCPA was designed (at least in part) to guard against is a sufficiently real injury to support Article III standing, and it cites to decisions from three other courts also holding, post-Spokeo, that "the allegation of a failure to accurately disclose information required by the FDCPA is sufficient to confer standing." Id. at *5 n.2, citing Church v. Accretive Health, Inc., 654 Fed. Appx. 990, 994 (11th Cir. 2016); Sayles v. Advanced Recovery Systems, 2016 WL 4522822, at *2 (S.D. Miss. Aug. 26, 2016); Dickens v. GC Servs. Ltd. P'ship, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016). The same result was reached in Fausz v. NPAS, Inc., 2017 WL 708725, *5 (W.D. Ky. Feb. 22, 2017), which quotes Church, supra, for the proposition that "through the FDCPA, Congress has created a new right — the right to receive the required disclosures in communications governed by the FDCPA — and a new injury — not receiving such disclosures."

Church has been widely followed, and other courts have also recognized that "violations of the FDCPA are distinguishable from ... other statutes and have been repeatedly found to establish concrete injuries" flowing from the failure to make required disclosures in communications to debtors. See, e.g., Long v. Fenton & McGarvey Law Firm P.S.C., 2016 WL 7179367, *3 (S.D. Ind. Dec. 9, 2016); Lane v. Bayview Loan Servicing, LLC, 2016 WL 3671467, *4 (N.D. Ill. July 11, 2016)(noting that "[t]he information-access cases cited by Spokeo suggest that, in this case, [Plaintiff] has alleged a sufficiently concrete injury

because he alleges that [Defendant] denied him the right to information due to him under the FDCPA." These decisions are consistent with pre-Spokeo cases from the Court of Appeals for the Sixth Circuit such as Stratton v. Portfolio Recovery Associates, LLC, 770 F.3d 443, 448-49 (6th Cir. 2014). And, as explained in Fausz, supra, Stratton is still cited post-Spokeo in support of the proposition that the FDCPA allows suit to be brought for violation of its provision without proof of actual monetary damages. See, e.g., Hawksley v. Weltman, Weinberg & Reis Co., P.S.C, 2017 WL 63033 (W.D. Ky. Jan. 5, 2017).

    The Court finds these decisions persuasive. The FDCPA does create an informational right which did not exist prior to its enactment, and that right is tied to the harm which a consumer may suffer if not provided with that information. Consequently, the deprivation of that information is, in most cases, sufficient to confer Article III standing. That was the law before Spokeo, and that law was not based on an erroneous understanding of Article III like the one corrected by Spokeo, but by application of well-settled principles of standing jurisprudence which Spokeo did not change (and, in fact, upon which Spokeo relied). The Court therefore declines to reconsider its prior grant of summary judgment to the Hagys on the ground that they lack standing to sue.

    IV.   Motion to Dismiss Supplemental Complaint

    The Law Firm Defendants' motion to dismiss the supplemental complaint is based solely on the argument that the Hagys lacked Article III standing to bring the original FDCPA claim. Because the Court has found that the Hagys have pleaded a sufficiently particularized and concrete injury-in-fact and that the Court has subject matter jurisdiction over this case, the motion to dismiss the supplemental complaint will be denied as well.

    V.   Motion to Certify Interlocutory Appeal

The Hagys have moved to certify the Court's October 22, 2013 judgment for immediate appeal.  They argue that there is a split of authority on the question of whether a letter to a debtor's attorney (which describes the June 30, 2010 letter at issue in this case) can violate the FDCPA, and that allowing the Court of Appeals to decide this issue before they pursue their supplemental complaint will materially advance the termination of this case.  The Law Firm Defendants have taken no position on this issue.

The legal standard applicable to this motion is not in dispute.  A court "may permit an appeal to be taken from an order certified for interlocutory appeal if (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b)."  In re City of Memphis, 293 F.3d 345, 350 (6th Cir. 2002).  The Court agrees that there appears to be a difference of opinion on the issue relating to the June 30, 2010 letter under the FDCPA, but that is not the only issue on which the Court entered judgment.  Staying the balance of the case while that issue is litigated in the Court of Appeals will not materially advance the termination of this case.  Since certification of issues for interlocutory appeal is to be "granted sparingly and only in exceptional cases," In re City of Memphis, supra, and because the Court does not believe this is such a case, that motion will be denied.

## VI. Conclusion

For the reasons set forth above, the Law Firm Defendants' motions to dismiss and for reconsideration (Docs. 157, and 158) and the motion to certify the case for an interlocutory appeal (Doc. 160) are denied.

-10-

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
